# EXHIBIT 1

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF DAKOTA                                      FIRST JUDICIAL DISTRICT
                                                      Case Type:  Employment

Patterson Dental Supply, Inc.,                        Court File No. _____

       Plaintiff,

                               **SUMMONS**
v.                                                    **[JURY TRIAL DEMANDED]**

Daniele Pace,

       Defendant.

---

THIS SUMMONS IS DIRECTED TO EACH DEFENDANT LISTED IN THE CAPTION ABOVE.

    1.    **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you.  The Plaintiff's Complaint against you is attached to this Summons.  Do not throw these papers away.  They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    2.    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**.  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this summons located at:

       Joseph W. Hammell and Kristin K. Zinsmaster, Jones Day, 90 South 7th Street, Suite 4950, Minneapolis, MN 55402.

    3.    **YOU MUST RESPOND TO EACH CLAIM**.   The Answer is your written response to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS**.  If you do not Answer within 20 days, you will lose this case.  You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint.  If you do not want to contest the claims stated in the Complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the Complaint.

    5.    **LEGAL ASSISTANCE**.  You may wish to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can

get legal assistance.  Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.     **ALTERNATIVE DISPUTE RESOLUTION**.  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.


Dated: July 18, 2019                                 **JONES DAY**

                                                     By: */s/ Kristin K. Zinsmaster*
                                                     Joseph W. Hammell (MN No. 0172698)
                                                     jhammell@jonesday.com
                                                     Kristin K. Zinsmaster (MN No. 0391299)
                                                     kzinsmaster@jonesday.com
                                                     90 South 7th Street, Suite 4950
                                                     Minneapolis, MN 55402
                                                     (612) 217-8800

                                                     *ATTORNEYS FOR PLAINTIFF*
                                                     *PATTERSON DENTAL SUPPLY, INC.*

STATE OF MINNESOTA                             DISTRICT COURT

COUNTY OF DAKOTA                          FIRST JUDICIAL DISTRICT
                                          Case Type:  Employment

Patterson Dental Supply, Inc.,                    Court File No. _____

          Plaintiff,

                                                  **COMPLAINT**

v.

Daniele Pace,

          Defendant.

Plaintiff Patterson Dental Supply, Inc. ("Patterson"), for its Complaint against

Defendant Daniele Pace ("Pace") states and alleges as follows:

## THE PARTIES

1.      Patterson is a Minnesota business corporation with its principal place of

business located at 1031 Mendota Heights Road, Saint Paul, Minnesota, 55120.  Patterson

is engaged in the business of distributing supplies, equipment, and software to dental

professionals across the United States.  Patterson is one of several business segments of

Patterson Companies, Inc., a publicly-traded medical and veterinary supply company.

2.      Upon information and belief, Daniele Pace is an individual who resides in

Peyton, Colorado.  Pace is a former employee of Patterson.  Pace consented to the

jurisdiction of this Court as further set forth below.

## JURISDICTION AND VENUE

3.      Jurisdiction in the State of Minnesota, and venue in this Court, are proper.

4.      Patterson's principal place of business is located in Saint Paul, Dakota County, Minnesota.

5.      The contract between Patterson and Pace (the "Employee Agreement"), was fully executed by Pace.  A true and correct copy of the Employee Agreement is attached as **Exhibit 1**.  The Employee Agreement specifies that Minnesota Courts shall have exclusive jurisdiction over disputes concerning the agreement.  (Compl. Ex. 1 ¶ 11.)  The Employee Agreement further states that Pace submits to personal jurisdiction in Minnesota. (*Id.*)

6.      Venue is appropriate in Dakota County pursuant to Minn. Stat. § 542.09 because Patterson's principal place of business is located in Dakota County.

7.      The Employee Agreement otherwise states that it shall be construed under and be governed in all substantive respects by the laws of Colorado.  (*Id.* ¶ 18.)

## FACTUAL BACKGROUND

8.      Patterson hired Pace in June 2013 as a CEREC, later CAD/CAM, Specialist. She worked out of Patterson's Denver location and she had responsibilities throughout Colorado and portions of Wyoming.

9.      The position "CAD/CAM Specialist" previously was known as "CEREC Specialist."  This is due to the fact that, until approximately September 2017, Patterson was the exclusive distributor of a CAD/CAM product called "CEREC."  Patterson is no longer the exclusive distributor of this product.

10.     CEREC stands for Ceramic Reconstruction, a system used to design and produce certain types of dental restorations utilizing CAD/CAM technology.  CAD/CAM

2

stands for "computer-aided design and computer-aided manufacturing" and is frequently utilized in dental restorations to design and create implants such as prostheses, crowns, bridges, and veneers.

11.     In her role at Patterson, Pace was responsible for working directly with territory sales representatives to provide specialized counseling and services to CAD/CAM customers.  She could, but was not required to, solicit her own business.  In this role, she was expected to, *inter alia*: analyze the business needs of her customers and prospects; discuss with customers and prospects the benefits and features of Patterson products; coordinate product demonstrations and installations; provide initial training and support for CAD/CAM products; be well-versed in Patterson products and services, industry information, and competitive intelligence; and maintain accurate records for prospects, customer orders, sales records, and other financial activity.

12.     Pace voluntarily terminated her employment with Patterson on or about March 18, 2019.

13.     On information and belief, immediately upon her departure from Patterson, Pace began working for Henry Schein, Inc. ("Henry Schein"), a distributor of health care and dental products and a direct competitor of Patterson in the Colorado market and elsewhere.

14.     On information and belief, at Henry Schein, Pace holds the title, "Regional Sales Manager."

15.     Pace signed an Employee Agreement with Patterson on February 9, 2018, in exchange for valuable consideration, including not only her continued employment at Patterson, but also a $25,000 lump-sum bonus.

16.     Paragraph 2 of the Employee Agreement is entitled "Confidentiality."  In paragraph 2, Pace promised, among other things, that both during her employment and following her termination she would "keep in confidence and trust all Confidential Information, and … will not use or disclose any Confidential Information without the written consent of Patterson except as may be necessary in the ordinary course of performing my duties to Patterson."  (Ex. 1 ¶ 2.)

17.     The same paragraph defines "Confidential Information" to include "all Proprietary Information and … the confidential information of others with whom [Patterson] has a business relationship."  (*Id.*)  Proprietary Information is "information having commercial value which has been developed or is possessed by [Patterson] or to which [Patterson] has rights, including . . . sales and financial reports and forecasts, cost information, confidential pricing information, … and customer and prospect information, including, without limitation, customer lists and prospect lists."  (*Id.* ¶ 1(a).)

18.     Paragraph 3 of the Employee Agreement is entitled "Company Property and Return of Property."  It provides, in part:

> Company Property includes all documents, records, samples, software, products, equipment, tools and other physical property, whether or not pertaining to Proprietary Information, which are furnished to me by the Company, purchased or leased at the expense of the Company, or produced by me in connection with my employment and will be and remain the sole property of the Company.  Company Property also includes, without limitation, any electronic documents or files that

4

contain any Proprietary Information or were produced by me in connection with my employment with the Company. All copies of Company property are also property of the Company. I shall return to the Company all such materials and other property as and when requested by the Company. In any event, I shall return all such materials and other property immediately upon termination of my employment for any reason. I shall also refrain from taking with me or otherwise retaining any such material or other property upon such termination.

(*Id.* ¶ 3.)

19.    Paragraph 3 of the Employee Agreement further provides:

In addition, at the time of my termination, I will provide the Company with any personally-owned cell phones, laptops, computers, tablets, floppy disk, CD, DVD, zip drive, jump drive, thumb drive, memory card, memory stick or other portable hard drive or external computer information storage device that contains or could contain any Company Property, including but not limited to Confidential Information or other devices that I have used to connect to the Company's network or otherwise used for job-related purposes so that the Company may erase any Company-related information from those devices.

(*Id.*)

20.    Paragraph 4 of the Employee Agreement is entitled "Nonsolicitation." It provides, in part:

(a) I acknowledge and agree that, solely due to my position with the [Patterson], I have had and will have access to certain trade secret and Confidential Information that Company has developed and shall continue to develop through the Company's efforts and at the Company's cost, including customer lists, which are proprietary to the Company.

(b) During the period of my employment and for one (1) year after the termination of such employment (regardless of whether such termination is voluntary or involuntary), I shall not, directly or indirectly, on behalf of myself or any other person or entity other than the Company:

(i) Use any of the Company's trade secrets, including its customer lists, to divert or solicit business from any Customer of the Company that was: (A) solicited directly by me or to whom I directly provided Services; or (B) whose solicitation or receipt of Services were directly or indirectly, in whole or in part, supervised by me; or

(ii) Use any of the Company's trade secrets to interfere in any way, or attempt to interfere, with the Company's relationships with any of its Suppliers [.]

(*Id.* ¶ 4.)

21.     Paragraph 5 of the Employee Agreement is entitled "Mobile Devices."  It provides, in part:

I understand that the Company may permit me to connect to the Company's network for the performance of my job [with] a personally-owned cell phone, laptop, computer, tablet, floppy disk, CD, DVD, zip drive, jump drive, thumb drive, memory card, memory stick or other portable hard drive or external computer information storage device that contains or could contain any Company Property, including but not limited to Confidential Information or other mobile device ("Mobile Device"). To the extent I use a Mobile Device to connect to the Company's network, I agree to the following rules:

(a) All employment policies of the Company apply to the use of Mobile Devices connected to the Company's network.

(b) All Company-related information residing on a Mobile Device belongs to the Company and may only be used for activities related to my job responsibilities.

(c) Mobile Devices connected to the Company's network are subject to monitoring by the Company at any time, and I will have no expectation of privacy in any files or messages sent, stored, created or received on a Mobile Device connected to the Company's network.  The Company may disconnect my Mobile Device from the Company's network at any time, with or without notice.

(d) I agree to provide the Company with access to any Mobile Device owned by me and connected to the Company's network,

6

used for Company business, or used to store Company Property, including but not limited to Confidential Information upon the Company's request. For example, in the event of a suspected incident, data breach, or policy violation associated with a Mobile Device, it may be necessary for the Company to access data on the device. I agree not to delete such data prior to facilitating the Company's access to the Mobile Device.

(e) For a period of one year following my departure from Patterson, I agree to provide the Company or its designated representative, at the Company's request, with access to any Mobile Device owned by me and connected to the Company's network, used for Company business, or used to store Company Property, including but not limited to Confidential Information at any time (including but not limited to any floppy disk, CD, DVD, zip drive, jump drive, thumb drive, memory card, memory stick or other portable hard drive or external computer information storage device that contains or could contain any Company Property, including but not limited to Confidential Information) so that the Company or its designated representative may make a forensic image and determine whether any Company information remains on any such devices. All Company information will be removed.

(*Id.* ¶ 5.)

22.     Paragraph 7 of the Employee Agreement is entitled "Notification." It provides, in part:

In the event that I obtain new employment within one (1) year after the termination of my employment with Patterson, I agree that I shall: (i) disclose this Agreement to my new employer prior to beginning the employment; and (ii) notify Patterson of the identity of my new employer within seven (7) days after accepting any offer of employment by sending a written notification to Patterson.

(*Id.* ¶ 7.)

23.     Pace agreed that "it would be difficult to measure any damages to [Patterson] that might result from [her] breach" of the Employee Agreement and, "that in any event monetary damages would be an inadequate remedy for any such breach." She agreed,

further, that should she breach any portion of the Employee Agreement, Patterson "shall be entitled to . . . temporary and permanent injunctive relief."  (*Id.* ¶ 8.)

24.    Pace's Employee Agreement is the type of agreement that companies commonly enter into to protect their trade secrets and their confidential information, including technology and software, sales strategy, pricing information, and customer lists (among other valuable information).  On information and belief, Pace signed a similar agreement with Henry Schein.

25.    On or about March 18, 2019, Pace terminated her employment with Patterson. On information and belief, she immediately thereafter took a job with Henry Schein as Regional Sales Manager in the Denver market.

26.    Just ten days prior to her departure from Patterson, on March 8, 2019, Pace forwarded three emails to her personal email account containing all of her business contacts from her employment at Patterson.

27.    There is no valid business reason for Pace to have forwarded Patterson Confidential Information to her personal email account.  She had the ability to access her business email account from her personal mobile device.

28.    On or about March 19, 2019,  an HR Operations Coordinator for Patterson's parent company sent a letter to Pace reminding her of the obligations contained in the Employee Agreement and that such obligations continued after her employment at Patterson ended.

29.    On the same date, the same HR Operations Coordinator sent a letter to Lorelei McGlynn, Senior Vice President and Chief Human Resources Officer for Henry

Schein, informing McGlynn of Pace's obligations under her Employee Agreement with Patterson, including, but not limited to, the nonsolicitation provisions contained at Paragraph 4.

30.     By no later than April 24, 2019, Pace had called on at least one Patterson customer in her capacity as Regional Sales Manager for Henry Schein.

31.     On information and belief, Pace called on an existing Patterson customer in Colorado Springs on or about April 23, 2019, and invited this customer to attend a Henry Schein CEREC event on April 24, 2019.

32.     Pace assembled a sales quote for this customer as recently as one week prior to her departure from Patterson.

33.     Since Pace's departure, the customer has not purchased any products or services from Patterson.

34.     On information and belief, Pace is actively soliciting other Patterson customers to move their business to Henry Schein.  Another customer has cancelled a previously scheduled demonstration with Patterson due to Pace's solicitation efforts on behalf of Henry Schein.

35.     During the period of her employment at Patterson, from at least December 2016 through March 8, 2019, Pace forwarded approximately forty work-related emails from her Patterson email address to her personal email address.  These emails and their attachments included Patterson sales quotes, customer contracts, email correspondence with customers, customer lists, sales reports, and Pace's business contacts.

36.     Many, if not all, of the Patterson documents that Pace forwarded to her personal email account are highly sensitive and constitute Patterson's Confidential Information.  (Ex. 1 ¶ 1(a).)  The documents include, without limitation: customer lists (with contact information); customer and prospect information; confidential pricing information; and marketing plans and strategies.

37.     By way of illustrative example only, on January 5, 2017, Pace forwarded to her personal email account an Excel spreadsheet entitled "CEREC Owners 07 27 15" containing detailed information (including contact and sales information) for approximately 700 Patterson customers who own the proprietary CEREC technology.

38.     Documents of the type that Pace forwarded to her personal email address—and the very documents that she did, in fact, send—are of great commercial value to Patterson.  Patterson's ability to compete in the marketplace, to sell its products at the most advantageous margins to its dental-practice customers, depends upon its ability to closely guard its commercial contracts, pricing agreements, and customer and prospect lists.

39.     Patterson does, in fact, closely guard its Confidential Information, including many of the documents that Pace forwarded to her personal email account.  For example, Patterson's Employee Handbook, which all employees receive, protects Confidential Information by prohibiting employees from removing from Patterson premises, copying, transmitting, or using any such information for any purpose outside of their Patterson employment.

40.     Patterson's Employee Handbook also prohibits employees from revealing any Confidential Information to non-Patterson persons without authorization from their

manager.  Employees also are required by the Employee Handbook to store information in a manner that prevents unauthorized parties from accessing or viewing them, install security software, and use encryption on all devices.

41.     Pace's current employer, Henry Schein, is in possession of the Employee Agreement.

42.     Pace has not returned Patterson Confidential Information in her possession, as required by the Employee Agreement.

43.     Pace has refused to confirm in writing that she has complied and will continue to comply with her Employee Agreement, as requested by the undersigned counsel for Patterson on several occasions.

44.     Pace's counsel has refused to agree to provide Patterson with appropriate access to Pace's Mobile Devices for review and forensic imaging, as required by the Employee Agreement.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

45.     Patterson restates and re-alleges the preceding paragraphs as if fully set forth herein.

46.     The Employee Agreement is a valid and binding contract supported by valuable consideration.

47.     The restrictive covenants outlined in the Employee Agreement are valid protections of Patterson's trade secrets, including, without limitation, pricing and financial information and customer contact information.

48.     The restrictive covenants contained in the Employee Agreement are reasonable in duration and geographic scope.

49.     Patterson has performed all of the terms and conditions required of it under the Employee Agreement, including but not limited to, payment of the agreed-upon signing bonus.

50.     Pace has breached the Employee Agreement in a number of ways, including, but not limited to, breaching the confidentiality provisions, the return of property provisions, the mobile property provisions, and the non-solicitation provisions.

51.     Pace has indicated, through her actions, that she intends to continue breaching her contractual obligations to Patterson.

52.     As a direct and proximate result of Pace's breach of her agreement with Patterson, Patterson has been harmed and will continue to be harmed.

53.     Pace's breach and future breaches of her contractual obligations to Patterson subjects Patterson to great risk of immediate and irreparable harm for which no remedy at law will be adequate.  Consequently, Patterson is entitled to temporary and permanent injunctive relief preventing further breaches of the Employee Agreement.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

54.     Patterson restates and re-alleges the preceding paragraphs as if fully set forth herein.

55.     Patterson maintains certain trade secret information as part of its business to provide it with a competitive advantage.

56.     These trade secrets include, without limitation, confidential business and financial information, customer information and lists, and other confidential and valuable information.

57.     Patterson undertook reasonable measures to maintain the secrecy of its trade secret information and prevent it from becoming available to other persons.   These measures include, without limitation, employment agreements with confidentiality provisions, such as the Employee Agreement signed by Pace, provisions in its Employee Handbook, and restricted access to its facilities.

58.     Patterson's trade secret information derives independent economic value from not being generally known to, and not readily ascertainable by, Patterson's competitors and others who could obtain economic value from its use.

59.     Patterson has expended significant time and financial resources in developing its trade secret information.

60.     Pace had a duty to maintain the secrecy of Patterson's Confidential Information and return the information upon the termination of her employment with Patterson.

13

61.     In violation of this duty, on information and belief, Pace has misappropriated Patterson's trade secrets by, among other things, retaining such trade secret information without authorization and using and disclosing Patterson's trade secret information to solicit Patterson customers and misappropriate Patterson's business for her own personal benefit and the benefit of Henry Schein.

62.     Pace had reason to know at the time of her misappropriation, use, and disclosure of Patterson's trade secret information that she had acquired it in a manner giving rise to a duty to maintain its secrecy and limit its use.

63.     As a direct and proximate result of Pace's misappropriation, Patterson has suffered recoverable harm.

64.     Pace maliciously misappropriated Patterson's trade secrets with willful and wanton disregard of Patterson's rights, and Patterson is entitled to recover its attorneys' fees, costs, and exemplary damages.

65.     Pace's misappropriation subjects Patterson to great risk of immediate and irreparable harm for which no remedy at law will be adequate.  Consequently, Patterson is entitled to temporary and permanent injunctive relief prohibiting Pace from further misappropriation of its trade secrets.

## COUNT III
## CONVERSION

66.     Patterson restates and re-alleges the preceding paragraphs as if fully set forth herein.

67.     Patterson is the owner of certain property currently in Pace's possession. This property includes, without limitation, emails and documents she sent from her Patterson email account to her personal email account from December 2016 through at least March 8, 2019.

68.     Pace knowingly retained this property during and following her employment with Patterson without Patterson's authorization.

69.     Pace did not return such property immediately upon termination of her employment, as required under the Employee Agreement.

70.     Pace refused to return such property at Patterson's request.

71.     Patterson is entitled to return of its property.

72.     Patterson has suffered economic damages as a result of Pace's conversion of its property.  Consequently, Patterson is entitled to an award of damages, including interest and the costs of recovering the property.


**WHEREFORE**, Plaintiff respects that this Court enter a judgment in its favor and against the Defendant as follows:

1.     A temporary injunction and permanent injunction, enjoining and restraining Defendant from further violating the provisions of the parties' Employee Agreement;

2.     A temporary injunction and permanent injunction, enjoining and restraining Defendant from further retention, use, disclosure, and/or misappropriation of Plaintiff's trade secrets and/or Confidential Information;

3.      An order requiring Defendant to comply with her obligations under the non-solicitation provisions in the Employee Agreement she entered into with Patterson and which she signed on February 9, 2018, including, without limitation, the non-solicitation provisions;

4.      An order requiring Defendant to return all property, including electronically stored data and files owned by Patterson;

5.      An order requiring Defendant to provide all Mobile Devices (as that term is defined in the Employee Agreement) for forensic examination and imaging;

6.      Damages, including exemplary damages, in an amount to be established at trial;

7.      Costs, expenses, and attorneys' fees as otherwise allowed by law; and

8.      Any other appropriate relief as may be available under the law and that this Court deems just and equitable.


Dated: July 18, 2019                              **JONES DAY**

                                                  By: */s/ Kristin K. Zinsmaster*

                                                  Joseph W. Hammell (MN No. 0172698)
                                                  jhammell@jonesday.com
                                                  Kristin K. Zinsmaster (MN No. 0391299)
                                                  kzinsmaster@jonesday.com
                                                  90 South 7th Street, Suite 4950
                                                  Minneapolis, MN 55402
                                                  (612) 217-8800

                                                  *Attorneys for Plaintiff*

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges and understands the provisions of Minn.

Stat. § 549.211.


/s/ *Kristin K. Zinsmaster*
*Kristin K. Zinsmaster*