# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Patterson Dental Supply, Inc.,

       Plaintiff,

   v.

Daniele Pace and Henry Schein, Inc.,

       Defendants.

Civil File No.: 19-cv-01940-JNE-LIB

---

## PATTERSON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY, FOR A PROTECTIVE ORDER, AND FOR SUPPLEMENTATION AND RE-DESIGNATION OF DISCLOSURES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    FACTUAL BACKGROUND .........................................................................3

     A.    PATTERSON'S RESPONSES TO DEFENDANTS' DISCOVERY REQUESTS ................................................................................................3

     B.    DEFENDANTS' FAILURE TO RESPOND TO PATTERSON'S DISCOVERY DESPITE THEIR CONTRADICTORY POSITION ..................8

     C.    PATTERSON'S CALCULATION OF ITS DAMAGES AND RESPONSES TO DEFENDANTS' RELATED DISCOVERY REQUESTS ..............................................................................................12

     D.    PATTERSON'S DESIGNATION OF ITS RULE 26 DISCLOSURES AS "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" ......................15

III.   ARGUMENT ................................................................................................17

     A.    PATTERSON HAS SEARCHED FOR DOCUMENTS ACROSS ALL COURT-ORDERED CUSTODIANS AND DEFENDANTS HAVE FAILED TO IDENTIFY ANY ADDITIONAL CUSTODIANS WITH RELEVANT INFORMATION .........................................................................17

     B.    PATTERSON HAS PRODUCED ALL RESPONSIVE, NON-PRIVILEGED MATERIALS CONTEMPLATED BY HENRY SCHEIN'S DISCOVERY REQUESTS AND HAS COMPLIED WITH ITS RULE 26 DISCLOSURE OBLIGATIONS .................................................19

          1.    Henry Schein's RPD Nos Nos. 16, 17, 20-22 and Pace's RPD No. 22 ..........................................................................................20

          2.    HSI's Interrogatory Nos. Nos. 4 and 9 .....................................23

          3.    HSI's Interrogatory Nos. 11 and 21 ..........................................25

          4.    Rule 26 Disclosure Obligations ...............................................26

     C.    DEFENDANTS CANNOT DEMONSTRATE GOOD CAUSE FOR A PROTECTIVE ORDER AS THE SCHEDULING ORDER IS REASONABLY INTERPRETED TO ALLOW BOTH SIDES EQUAL DISCOVERY ..............................................................................................28

     D.    DEFENDANTS FAIL TO SHOW GOOD CAUSE TO DE-DESIGNATE PATTERSON'S RULE 26 DISCLOSURES AS ATTORNEY'S EYES ONLY ..............................................................................................30

IV.   CONCLUSION .............................................................................................33

## **TABLE OF AUTHORITIES**

**Page**

<span style="font-variant:small-caps">Cases</span>

*Agence France Presse v. Morel*,
  293 F.R.D. 682 (S.D.N.Y. 2013) .........................................................................26

*Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*,
  No. 12-CV-2706, 2014 WL 10714011 (D. Minn. Dec. 5, 2014) (Brisbois, J.).....................28

*Edeh v. Equifax Info. Servs.*,
  LLC, No. CIV. 11-2671 SRN/JSM, 2013 WL 1749912, at *14 (D. Minn. Apr.
  23, 2013), aff'd, 291 F.R.D. 330 (D. Minn. 2013)..................................................27

*Geiger v. Z-Ultimate Self Def. Studios*,
  LLC, No. 14-CV-00240-REB-NYW, 2016 WL 11697106 (D. Colo. June 7,
  2016).......................................................................................................27

*Gen. Dynamics Corp. v. Selb Mfg. Co.*,
  481 F.2d 1204 (8th Cir. 1973) .........................................................................28

*Graphic Directions, Inc. v. Bush*,
  862 P.2d 1020, 1025 (Colo. App. 1993)...............................................................22

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) .......................................................................................28

*InCompass IT, Inc. v. Dell Inc.*,
  No. CV 11-0629, 2012 WL 13027072 (D. Minn. June 29, 2012) ...................................25, 26

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
  No. 15-CV-3183, 2016 WL 6997113 (D. Minn. Sept. 6, 2016)...........................................18

*Johnson v. Charps Welding & Fabricating, Inc.*,
  No. 14-CV-2081, 2017 WL 9516243 (D. Minn. Mar. 3, 2017) ...........................................19

*Krueger v. Ameriprise Financial, Inc.*,
  2015 WL 224705 (D. Minn. Jan. 15, 2015)..........................................................30

*Mitchell v. Mims*,
  No. 4:18-CV-00515- DGK, 2019 WL 573435 (W.D. Mo. Feb. 12, 2019)...........................24

*Northbrook Digital, LLC v. Vendio Servs., Inc.*,
   625 F. Supp. 2d 728 (D. Minn. 2008) ...................................................................28

*Porous Media Corp. v. Midland Brake Inc.*,
   187 F.R.D. 598 (D.Minn. 1999)............................................................................23

*Shukh v. Seagate Tech., LLC*,
   295 F.R.D. 228 (D. Minn. 2013)............................................................................28

*SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*,
   No. CIV.03-3302(RHK/FLN), 2006 WL 1472860 (D. Minn. May 26, 2006),
   aff'd, 491 F.3d 350 (8th Cir. 2007) .......................................................................23

*Tri-State Grease and Tallow Co., Inc. v. Milk Specialties Company*,
   2012 WL 13029572 (D. Minn. Apr. 13, 2012).......................................................30

*Wilson v. Corning, Inc.*,
   171 F. Supp. 3d 869 (D. Minn. 2016) ....................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26.......................................................................................... 15, 19, 28

# I.    <u>INTRODUCTION</u>

Defendants' "Motion to Compel Discovery, for a Protective Order, and for Supplementation and Re-Designate Patterson's Disclosures" ("Motion") provides an incomplete, misleading, and inaccurate representation of Patterson's discovery responses, Defendants' own conduct, and the parties' meet-and-confer discussions. The truth is that Patterson conducted a reasonable and diligent search for responsive documents. It searched an expansive set of 18 custodians[1], determined by agreement with Stephen Premo (joint counsel for both Defendants), as modified by this Court's order. (*See* ECF No. 149 at 32-33.) The only additional custodian Defendants now seek to add by their Motion is Sarah Mealey. But as Patterson explained to Defendants in the meet-and-confer process, and as evidenced by the declaration submitted by Ms. Mealey in connection with this Motion, she has no information or documents beyond the two letters she sent, which already have been produced. Then, after a burdensome and expensive search of these 18 custodians (involving over 11 lawyers and costing over $140,000[2]), Patterson produced over 140,000 pages of responsive documents and electronically-stored information. Defendants frequently assert in their Motion that Patterson has not produced any documents or information responsive to certain requests, but such assertions not supported by any declaration or otherwise and are patently untrue, as the illustrative examples described

---

[1] In contrast, Henry Schein searched only 12 custodians, arguing that it would be unduly burdensome to search more. (*See* ECF No. 158 ¶ 26, 33 and Ex. 23, 28.)

[2] *See* Declaration of Joseph Hammell in Opposition to Defendants' Motion ("Hammell Decl.") at ¶ 3.

below demonstrate.   In short, Patterson has properly complied with its discovery obligations, unlike Defendants.   *See* Plaintiff's Motion to Compel Discovery from Defendants (ECF No. 247) ("Patterson's Motion").

In fact, Defendants' Motion seems largely intended as a counterweight to Patterson's Motion, which Defendants knew Patterson would be filing.   This is demonstrated by, among other things, the fact that Defendants waited many months before raising any issue with Patterson's discovery responses and also by their rehashing of issues already addressed and resolved.   Additionally, most of Defendants' motion seeks pure make-work, because they know from the meet-and-confer process that Patterson responses are complete and that Patterson has not withheld documents on the basis of its objections. And yet, Defendants want to put Patterson to the unnecessary trouble and expense of providing supplemental discovery responses simply to state this undisputed fact.   Patterson has made clear to Defendants it is willing to do this, provided that Defendants respond to Patterson's discovery.   Discovery is a two-way street, and Defendants cannot maintain their inconsistent and meritless position that they are not bound by language in the Scheduling Order (that "any side" is limited to 30 written discovery requests), while Patterson supposedly is bound.   As explained in Patterson's Motion, the intent of the Scheduling Order and the parties' communications and actions demonstrate that discovery was intended to be equal, with each party being able to serve 30 discovery requests on any other party.   Defendants cannot have it both ways, as they are trying to do.   For these same reasons, as discussed in Patterson's Motion and below, Defendants' request for a protective Order excusing them from answering Patterson's discovery should be denied.

Finally, Defendants have failed to show good cause to re-designate Patterson's Rule 26 Disclosures from their current status as Highly Confidential -- Attorney's Eyes Only. The Disclosures contain highly confidential information about Patterson's sales to specific customers, including profit information, as well as personal information about witnesses. In contrast, Defendants have refused even to produce such information (even with an AEO designation), and have improperly redacted such information from documents that they have produced as admittedly responsive and relevant. (*See* Patterson Motion.) There is no need for a re-designation, since Defendants are able to show Patterson's Rule 26 Disclosures to their expert, as well as Henry Schein's in-house counsel, and there is nothing that prevents Defendants from talking with their employees or other witnesses about any facts or customers, without revealing Patterson's Highly Confidential Disclosures. Furthermore, Patterson proposed that Defendants identify specific additional individuals to whom they claimed to have a need to reveal Patterson's Disclosures, and Patterson would evaluate each person on a case-by-case basis. Without explanation (and without addressing this proposal in their Motion), Defendants refused.

## II.   FACTUAL BACKGROUND

### A.   Patterson's Responses to Defendants' Discovery Requests

Defendant Pace served her first set of discovery on Patterson on November 20, 2019, and her second set on February 8, 2020, which collectively totaled 19 interrogatories and 26 RPDs. (Hammell Decl. ¶ 4.) Patterson served responses to Pace's two sets of discovery on January 3, 2020 and March 9, 2020 respectively. (*Id.* ¶¶ 5-9, Exs. A-D.) Patterson supplemented its answers to Pace's first set of interrogatories on February 11 and

April 23, 2020, the latter pursuant to this Court's Order.  (*Id*. ¶¶ 10-11, Ex. E.)  Patterson also supplemented its answers to Pace's second set of interrogatories on May 29, 2020. (*Id*. ¶ 12-13, Ex. F.)

Defendant Henry Schein served a total of 21 interrogatories and 22 RPDs on Patterson on January 22, 2020, and Patterson provided responses and answers on February 21, 2020. (*Id*. ¶¶ 14-16, Exs. G, H.)  Between January and April 2020, Patterson also made eleven rolling productions of documents in response to both Pace and Henry Schein's discovery requests, producing over 140,000 pages of responsive documents and electronically-stored information.  (*Id*. ¶ 17.)

Unlike Pace's discovery, Henry Schein's RPDs did not designate any custodians to be searched for responsive documents, nor did Henry Schein at any point prior to receiving Patterson's productions seek to identify which custodians it wished Patterson to search. (*Id*. ¶ 18.)  As such, after meeting and conferring with Stephen Premo (counsel for both Pace and Henry Schein) regarding the custodians to be searched, and after receiving this Court's direction to use all proposed custodians from Patterson's Denver branch and their supervisors, Patterson went on to search for responsive documents from the following 18 custodians[3]:

1.  Elliott Carson

---

[3] Five of the custodians proposed by Defendant Pace are neither Denver branch employees nor supervisors of any Denver branch employees: Dave Lardy, Andrea Frohning, Dave Misiak, Mark Walchirk, and Brent Pedersen.  Additionally, two proposed custodians that were formerly sales employees in Patterson's Denver branch – Sarah Monks Walla and Anthony DiPaola -- left Patterson over five years ago and as such, did not have any emails or files available to be searched. (Hammell Decl. ¶ 21.)

2.  Chad Bushman

3.  Kelly Davis

4.  Seth Watson

5.  Mike Long

6.  David Balyeat

7.  Pat Noyce

8.  Daniele Pace

9.  Carrie Dougherty

10. Sarah Clark

11. Steven Benshoof

12. Douglas Dix

13. Lonnie Gwynn

14. Cliff Mayes

15. Travis Nye

16. Jennifer Tercero

17. Matt Thoreson

18. Nick Zabolio.

(*Id*. ¶ 19.)

In addition to these 18 custodians, Patterson also searched for and produced responsive documents from other sources, such as company handbooks and policy materials, employee agreements, and customer sales proposals. (*Id*. ¶ 21.)

On July 29, 2020, Patterson's counsel initiated the meet-and-confer process regarding deficiencies in Henry Schein's discovery responses, specifically the inappropriate redaction of documents. (*Id.* ¶ 22, Ex. I.) Then on August 13, 2020, six months after Patterson's discovery responses and four months after the last of Patterson's rolling production, counsel for Henry Schein wrote to Patterson's counsel for the first time regarding alleged deficiencies in Patterson's productions and interrogatory answers. (*Id.* ¶ 23, Ex. J.) In a meet-and-confer discussion on August 27, 2020 and in a subsequent letter on September 3, 2020, counsel for Patterson explained the steps taken to search for and produce responsive documents, including the number and background of custodians used and the variety of sources searched. (*Id.* ¶¶ 24-25, Ex. K.) Counsel also indicated that Patterson had reasonably concluded that Henry Schein's requests pertained to the same custodians as Pace's, as the two parties share counsel and Henry Schein never indicated a differing view of the relevant custodians. (*Id.*) In response, counsel for Henry Schein made the astonishing assertion that it was unaware of the custodians Patterson searched, despite the overlap in counsel. (*Id.* ¶ 26, Ex. L.) Counsel for Henry Schein then requested that Patterson add Sarah Mealey ("Mealey"), a former Human Resources employee at Patterson, as a custodian. (*Id.*) Mealey was the only additional custodian Henry Schein requested. (*Id.*)

In a further meet-and-confer discussion on September 29, 2020, Patterson's counsel explained that based on Patterson's investigation, it did not believe Mealey had any additional responsive documents beyond those already produced. (*Id.* ¶ 27.) Mealey was employed as an HR Operations Coordinator at Patterson's Minnesota headquarters.

- 6 -

(Declaration of Sarah Mealey ("Mealey Decl.") ¶ 1.) Her only involvement in the matters at issue in the case was to send form letters to departing Patterson employees, and their new employers, reminding them of the departing employees' obligations to Patterson under their employee agreements.   (*Id*. ¶ 2.) The letters sent to Pace and Henry Schein have already been produced in this matter.  (*Id*. ¶¶ 3-4, Exs. A, B.)  Mealey has had no further involvement with or interaction with Pace and no other documents.  (*Id*. ¶¶ 5, 7.) Counsel for Henry Schein has been made aware of these facts, yet Henry Schein has been unwilling to withdraw its request that Patterson add Mealey as a custodian. (Hammell Decl. ¶ 27.)

Through the meet-and-confer process, Henry Schein also claimed that it could not tell whether Patterson was withholding documents based on its objections to certain RPDs, specifically RPD Nos. 2-4, 5, 6-8, 10, 11, and 13.  (*Id*. ¶ 28.)  In the parties' August 27, 2020, conference, Patterson's counsel made clear to Defendants' counsel (to the extent it was not clear already) that Patterson was not withholding any documents on the basis of any objections and had produced all responsive documents located in the document search and review.  (*Id*. ¶ 29.)  As counsel for Patterson explained, Patterson made extensive efforts to search for and produce documents responsive to Henry Schein's discovery within the agreed time periods, including (without limitation):

- Documents and communications containing any references to Pace [Responsive to RPD Nos. 2-4];

- Documents and communications referencing any customer with whom Pace had any contact during her time at Patterson, including but not limited to the 17 customers identified by Patterson for which Defendants were ordered to provide responsive documents [Responsive to RPD No. 5];

- Documents and communications relating to Patterson's trade secrets misappropriated by Pace and Henry Schein [Responsive to RPD Nos. 6-8]

- Documents and communications relating to the "CEREC Owners 07 27 15" spreadsheet [Responsive to RPD No. 10]; and

- Documents and communications concerning Patterson's efforts to maintain the secrecy of its trade secrets, including company policy handbooks applicable to Denver branch employees and employee agreements with Denver branch employees [Responsive to RPD Nos. 11, 13].

(*Id.* ¶ 30.)

Despite Patterson's clear explanation and representation of its efforts to produce documents, counsel for Defendants nonetheless requested that Patterson supplement its responses merely to state that no documents were being withheld. (*Id.* ¶ 31.)

Counsel for Henry Schein also identified several interrogatory answers that they claimed were deficient and needed supplementation. (*Id.* ¶ 32.) Henry Schein's requested supplementation was duplicative of information provided in Patterson's Rule 26 Disclosures (such as the identities of persons with information and Patterson's damage calculations) and/or Patterson's responses to Pace's discovery (such as identification of the trade secrets that Patterson believes Defendants have misappropriated). (*Id.*) Henry Schein could readily refer to those responses for the information sought, but instead demanded supplementation to its own discovery requests.

## B. Defendants' Failure to Respond to Patterson's Discovery Despite Their Contradictory Position

In response to Defendants' requests for supplementation, counsel for Patterson indicated that Patterson would be willing to provide supplemental responses to certain interrogatories and RPDs. (*Id.* ¶ 33.) However, as the parties were meeting and conferring

on an ongoing basis, on September 2, 2020, Defendants served responses to Patterson's second and third sets of discovery to Henry Schein and Pace, respectively. (*See* ECF No. 252 at ¶¶ 9-12, Exs. 7-10.) Defendants failed to provide any response to Patterson's requests whatsoever, contending that Patterson's discovery exceeded the number of permitted discovery requests under the Scheduling Order and that Patterson was not entitled to serve the discovery. In a teleconference on Defendants' objections on September 29, 2020, counsel for Defendants continued to refuse to provide any responses, claiming that the Scheduling Order, which provided that discovery would be limited to 30 interrogatories and 30 RPDs "by any side," barred Patterson from serving its latest discovery on Defendants. (Hammell Decl. ¶ 34.)

As detailed in Patterson's Motion, it was the parties' mutual intention and understanding throughout the discovery process that discovery was intended to be equal, and each party was entitled to 30 interrogatories, 30 RPDs, and 30 Request for Admissions on every other party. (*Id.* ¶ 35.) Consequently, Patterson never thought it was necessary to pursue an amendment to the Scheduling Order with regards to written discovery as it believed the parties' statements and conduct demonstrated that all had interpreted the Order to allow equal discovery by both sides. (*Id.*) In fact, Patterson's brief in connection with the parties' Partial Joint Motion to Amend the Scheduling Order pointed out that under the existing Scheduling Order, Patterson was entitled to a total of 60 interrogatories and 60 RPDs – 30 served upon each Defendant. (*See* ECF No. 136 at 13.) Defendants made no arguments to the contrary. Furthermore, Defendants themselves argued in their own briefing that the Scheduling Order was intended to permit "equal" discovery. (ECF No.

250 at 16.)  Patterson opposed Defendants' efforts to double (from 7 to 14) the number of depositions Defendants could take because Defendants failed to demonstrate good cause for such a significant increase in discovery, not least of which because Defendants had not even identified the additional individuals they wanted to depose and because they have claimed to be acting in unison throughout this litigation under a common interest agreement.[4]  (ECF No. 136 at 13-14.)  Such a unified, singular defense has been further evidenced by this present joint Motion.

As explained in greater detail in Patterson's Motion, Defendants' newfound contention that they can serve a combined 60 discovery requests, while Patterson should be limited to a total of 30, is further belied by their own conduct.  Neither Defendant has contended in response to Patterson's discovery requests prior to August 2020 that the numerical limitation in the Scheduling Order applied to the combined number of Patterson's requests to both Henry Schein and Pace.  (Hammell Decl. ¶ 36.)  In fact, both Defendants provided substantive responses and produced documents in connection with Patterson's prior discovery, even though certain of those requests fell beyond a total of 30 when counted together.  (*Id.*)  Defendants' current position that "any side" is limited to 30 written discovery requests is also contradicted by their own discovery, as they have collectively served 40 interrogatories and 48 RPDs on Patterson.  (*Id.* ¶ 37.)  By the present Motion, Defendants obviously seek to compel Patterson to provide responses to interrogatories and RPD that go beyond the supposed limit of 30 for "any side."

---

[4] Henry Schein waived its request for additional written discovery, so the Court did not address this issue in its Order. (ECF No. 195 at 5, n.2.)

Defendants also waste considerable time in their Motion rehashing prior disagreements which were the subject of prior motions. (*See* ECF Nos. 123, 169; *see also* ECF Nos. 149, 195.) For example, Patterson's Interrogatory No. 3 to Pace and Interrogatory No. 2 to Henry Schein both sought information relating to Defendants' denials of certain allegations in Patterson's Complaint. After meeting and conferring, the parties agreed to narrow these requests to specific paragraphs in the Complaint and both Pace and Henry Schein provided supplemental responses on May 20, 2020 and August 27, 2020, respectively. (ECF No. 169; Hammell Decl. ¶ 38.) Patterson and Henry Schein similarly reached agreement on Interrogatory No. 4, which requested documents that Pace gave to Henry Schein. (Hammell Decl. ¶ 39.) In another instance, Henry Schein provided supplemental responses to Interrogatory No. 7 after meeting and conferring in connection with Patterson's Motion to Compel Discovery against Henry Schein.[5] (*Id*. ¶ 40, Ex. M; ECF No. 169.) Notably, Henry Schein never raised any argument in response to Patterson's Motion to Compel Discovery regarding subparts and continued to respond to additional Patterson discovery even after agreeing to supplement its responses to the requests with purported "subparts." (Hammell Decl. ¶ 41.)

In light of Defendants' contradictory position regarding the counting of discovery, Patterson's counsel told Defendants' counsel that, although Patterson was willing to provide supplemental responses to certain of Defendants' requests, it would only do so on a mutual basis, meaning Defendants must respond to Patterson's requests as well, and drop

---

[5] Patterson has requested further supplementation to Henry Schein's response to Interrogatory No. 7, as its latest response remains deficient.

their frivolous objections based on the number of requests served.  (*Id.* ¶ 42.)  Defendants rejected Patterson's proposal and again refused to provide responses, instead bringing the instant Motion.

### C.     Patterson's Calculation of its Damages and Responses to Defendants' Related Discovery Requests

In Henry Schein's letter of August 13 and during the parties' telephonic conferences, Defendants also challenged the sufficiency of Patterson's responses to various discovery requests related to Patterson's calculation of damages, including Henry Schein's RPD Nos. 16-17, 20-22 and Pace's RPD No. 22. (*Id.* ¶¶ 23, 44, Ex. J.)  In particular, Defendants asserted that Patterson had failed to make a complete production of documents concerning its damages and lost sales, its computation of damages, and its regional and branch-wide sales before and after Pace's departure.  (*Id.* ¶ 43.)

Patterson provided a calculation of its damages to Defendants on April 22, 2020 as part of its Second Supplemental Initial Disclosures.  (*Id.* ¶ 44, Ex. N.)  As part of its damages calculation, Patterson also included a spreadsheet listing the names and associated sales for 168 Patterson customers for which it had lost sales between the year preceding Pace's departure to Henry Schein and the year following, lost equipment proposals that Pace had made prior to her departure, or lost equipment trade-up sales that went to Henry Schein. (*Id.* ¶ 45)

In addition to this detailed breakdown of losses, Patterson has produced a large number of documents relating to its damage claims.  For example, Patterson produced equipment sales proposals that Pace made to ███████████ (*Id.* ¶ 46, Ex. O), ████████

- 12 -

████ (*Id.* ¶ 47, Ex. P) and ████████ (*Id.* ¶ 48, Ex. Q) prior to her departure to Henry Schein, demonstrating the business that Pace and Henry Schein later stole from Patterson. Patterson also produced over 140 documents showing Pace forwarding Patterson confidential information to her personal email, including CEREC owner spreadsheets, customers contracts, and sales proposals, that she and Henry Schein have utilized in her efforts to steal Patterson's business for Henry Schein. (*Id.* ¶¶ 49-52, Exs. R, S, T.)

Patterson also searched for and produced all documents it located relating to the 168 customers included in its damages calculations. (*Id.* ¶ 53.) In response to Defendants' requests, Patterson is currently preparing an updated damages analysis that provides a breakdown of the sales figures by product category and will produce this updated information as soon as practicable. (*Id.* ¶ 54.)

It is also important to note that many of the documents Defendants claim they need are actually within their own custody and control, not Patterson's. This includes documents regarding Defendants' misappropriation of Patterson's Confidential Information and trade secrets, responsive to RPDs 16 and 17. Yet, as Patterson's Motion discusses, Defendants have been unwilling to produce any discovery for more than the 17 customers that the Court previously ordered, despite Patterson uncovering evidence that Pace has misappropriated trade secrets regarding at least seven additional customers. (*See* ECF No. 250 at 8.) Even though Defendants are flouting their discovery obligations, Patterson has produced all responsive documents it has located after a broad and thorough search. (Hammell Decl. ¶ 17.) Examples of such documents include a voicemail received by a

Patterson employee from a customer explaining that Pace had recently been to his office to sell him new CEREC equipment (*See* ECF No. 252, ¶ 45, Ex. 36) and communications among Patterson employees regarding Pace calling on Patterson customers following her departure.  (Hammell Decl. ¶ 55, Ex. U.)  Henry Schein also admits it has not completed its own document production, which may reveal additional customers for which Defendants have misappropriated Patterson's trade secrets.  (*See* Defendants' Brief, ECF No. 263, at 7.)

Defendants also are seeking documents they never requested in discovery.  In their letters of August 13 and September 14, as well as in the parties' meet-and-confer on August 27, Defendants indicated that Patterson had produced one Denver branch and regional sales spreadsheet for May to July 2019 and demanded that Patterson produce all such records through April 2020.  (Hammell Decl. ¶¶ 23, 26, 56, Exs. J, L.)  However, Defendants did not serve any discovery request asking for this type of sales data; Defendants only requested information about *lost* or *diminished* sales, not all sales generally within the Denver branch.  (*Id.* ¶ 16, Ex. H.)  The spreadsheet referred to by Defendants was attached to another responsive document and therefore was produced, not as part of Patterson's response to Defendants' RPDs relating to damages.  (*Id.* ¶ 56.)  Consequently, Patterson properly declined to produce other such reports for other time periods, as Defendants demanded.

In short, Defendants misrepresent the facts when they say that the only information Patterson produced regarding its damages was in its Rule 26 Disclosures and that it has refused to produce anything else.  In fact, Patterson has fully complied with its obligations

and produced a substantial amount of information and documents, responding fully to Defendants' discovery requests.

### D.    Patterson's Designation of Its Rule 26 Disclosures As "Highly Confidential -- Attorneys' Eyes Only"

Patterson served its Rule 26(a) Initial Disclosures on Pace on September 19, 2019. (*Id*. ¶ 57.)  Patterson supplemented its disclosures on October 17, 2019 at Pace's request, in order to provide full, personal addresses for each of the persons with information, several of whom are current employees of Patterson. (*Id*. ¶ 58.)  Patterson agreed to do so under a Highly Confidential - Attorney's Eyes Only ("AEO") designation, given the competitive nature of the case, the personal and private nature of the information requested, and the relationship between Patterson and Henry Schein.[6]  (*Id*. ¶ 59, Ex. V.)

As noted above, Patterson further supplemented its disclosures on April 22, 2020, to provide the names of additional persons with information and a calculation of its damages.  Patterson designated these disclosures as Highly Confidential -  Attorney's Eyes Only not only to protect its employees' private information and in consideration of the competitive relationship between the parties, but also due to the highly sensitive nature of Patterson's sales and profit information and the significant harm Patterson would face from disclosure.  (Declaration of Elliott Carson ("Carson Decl.") ¶¶ 2-3.)

---

[6] Henry Schein's own Initial Disclosures did not contain addresses, or even job titles, for any witnesses.  (Hammell Decl. ¶¶ 60-61, Ex. W.)  When asked to provide such information in consideration of Pace's own demand on Patterson, Henry Schein only provided job titles and city/state location.  (*Id.*)  Henry Schein also redacted personal addresses from its own document productions. (*Id*. ¶ 62.)

Exhibit A to the Second Supplemental List of Disclosures is a spreadsheet listing 159 Patterson customers from which Patterson has lost sales due to Defendants' wrongful conduct, as well as 7 additional customers for which Patterson lost equipment sales or upgrade opportunities due to the same.  (Hammell Decl. ¶ 45.)  The spreadsheet includes sales figures for each of these customers year over year, as well as proposal values for those customers for whom proposals were lost.  (*Id*.)  Patterson designated this Exhibit as AEO because it includes the very types of information that the designation is intended to protect– financial information and customer lists–and if such information were disclosed to Defendants Patterson would suffer substantial harm.  (*Id.*; *also* Carson Decl.; *also* Protective Order, ECF No. 57, at 2 (providing that AEO materials may include, *inter alia,* "pricing and financial information [and] customer and prospective lists"))  The AEO designation still permits Henry Schein's expert witness, Defendants' outside counsel, and Henry Schein's in-house counsel to see the documents.  (Protective Order, ECF No. 57, at 6-7.)

On May 8, counsel for Defendants requested confirmation that Patterson intended to designate its disclosures and damages as AEO, arguing that Defendants "needed to be able to investigate" Patterson's lost profits as to each customer, including by reviewing the list with non-attorney witnesses and the customers themselves.  (Hammell Decl. ¶ 63, Ex. X.)  In a meet and confer on May 29, 2020, Defendants' counsel again argued that Defendants were entitled to know the Patterson customers and amounts for which Patterson is claiming damages, and that Defendants would need to show this information to Henry Schein sales representatives responsible for these accounts.  (*Id*. ¶ 64.)  Counsel for

Patterson responded that Defendants would be able to discuss these (and any other) customers with Pace and employees at Henry Schein without revealing the fact that the customers were Patterson's or revealing the AEO information.  (*Id*. ¶ 65.)  Counsel for Patterson nonetheless agreed to consider a proposed list of specific Henry Schein employees with whom Defendants would like to share the information.  (*Id*.)  Counsel for Defendants did not provide any such list for Patterson's consideration.  (*Id*. ¶ 66.)

The parties discussed the issue of Patterson's AEO designation again in a meet-and-confer on September 29, 2020, where counsel for Defendants again refused to provide specific individuals to whom they wished to show Exhibit A and instead asked Patterson to agree that Defendants could show the list of customer names to *any* Henry Schein employees.  (*Id*. ¶ 67.)  Patterson did not agree to this request, reiterating that Defendants were not precluded from asking Henry Schein employees about customer names without reference to Patterson or its damages.  (*Id*.)

## III.   ARGUMENT

### A.   PATTERSON HAS SEARCHED FOR DOCUMENTS ACROSS ALL COURT-ORDERED CUSTODIANS AND DEFENDANTS HAVE FAILED TO IDENTIFY ANY ADDITIONAL CUSTODIANS WITH RELEVANT INFORMATION.

Defendants' untimely motion to add Sarah Mealey as a custodian should be denied. After receiving Pace's first set of discovery requests, Patterson engaged in a diligent effort to determine all persons with potentially relevant documents, including by interviewing possible custodians and discussing with Patterson employees where relevant documents might be kept.  On this Court's order, Patterson then searched for and produced documents

in the files of all Denver branch custodians identified by Pace, as well as their supervisors, resulting in a total of 18 custodians including Pace herself.  Patterson also searched for responsive documents in other Patterson company files, including employee agreements and policies.  By any reasonable measure, Patterson has made diligent and sufficient efforts to comply with its discovery obligations to Defendants.

Conversely, Henry Schein never identified custodians nor raised any questions regarding custodians with Patterson, despite receiving multiple document productions from Patterson between January and April and its own counsel's awareness of the custodians Patterson was using to respond to Pace's requests.  Henry Schein also was unquestionably aware of those persons that Patterson had identified as having information in its Initial Disclosures and discovery responses to Pace.  It readily could have provided Patterson with a list of potential custodians or inquired with Patterson about the custodians it was utilizing. The fact that Henry Schein only now takes issue with the custodians does not constitute grounds to order Patterson to conduct additional document searches, review, and production, six months later. *See Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (internal quotations omitted) ("even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."). Even now, Defendants are only able to identify one additional custodian – Sarah Mealey -- demonstrating that Patterson has not improperly "limited" the number of custodians it has searched, as Defendants argue.

In any event, there is nothing to be gained in adding Sarah Mealey as a custodian to be searched.  As she describes in her declaration, Ms. Mealey had minimal involvement in Pace's situation and would not have any additional documents beyond the two, standard form letters she sent to Pace and Henry Schein in March 2019, both of which already have been produced.  (Mealey Decl. ¶¶ 3-7, Exs. A, B.)  Additionally, Patterson has already produced all employee agreements for Patterson's Denver branch employees, as well as any obligation letters that other employees received. (*See, e.g.,* Hammell Decl. ¶¶ 68-69, Exs. Y, Z.)  Courts properly limit discovery upon a showing, like here,  that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2017 WL 9516243, at *8 (D. Minn. Mar. 3, 2017) (quoting Fed. R. Civ. P. 26(b)(2)(C)).  Because the additional discovery sought from Mealey has already been produced from other sources, adding her as a custodian would be duplicative, unnecessary, and disproportionate to the case and should be denied.

### B.  PATTERSON HAS PRODUCED ALL RESPONSIVE, NON-PRIVILEGED MATERIALS CONTEMPLATED BY HENRY SCHEIN'S DISCOVERY REQUESTS AND HAS COMPLIED WITH ITS RULE 26 DISCLOSURE OBLIGATIONS.

Defendants argue that Patterson has failed to comply with its Rule 26 disclosure obligations regarding damages and has failed to produce documents in response to Defendants' discovery requests.  Defendants are wrong, and each of the pertinent requests is addressed in turn below.

- 19 -

1. **Henry Schein's RPD Nos. 16, 17, 20-22 and Pace's RPD No. 22**

Henry Schein's RPD Nos. 16, 17, 20-22 and Pace's RPD No. 22 seek documents relating to Patterson's lost sales, lost customers, and damages. Defendants claim that Patterson has not produced anything other than the damage calculation contained in its Rule 26 Disclosures, but they are wrong. As explained above, Patterson has produced all responsive documents located after a reasonable, diligent search, including, without limitation, documents referencing any customer with whom Pace interacted during her employment at Patterson, communications with such customers, sales orders, and proposals. Patterson made clear to Defendants that it has not withheld documents on the basis of its objections.

Further, Defendants' arguments ignore the reality that much of the evidence of the damages they have caused is in their own possession. Patterson's losses are directly related to Defendants' misappropriation of Patterson's Confidential Information and trade secrets, the tortious interference with Patterson's current and prospective customer relationships, repeated breaches of Pace's obligations to Patterson, and Defendants usurpation of Patterson's business. Naturally, much of the evidence of these unlawful acts would come from the files of Defendants themselves. This has been proven by various documents produced to date by Defendants, including, for example:

- An email from Adam Hughes ("Hughes"), Pace's manager at Henry Schein, on March 8, 2019, after Pace had accepted a position from Henry Schein, referencing two CEREC sales leads for ███████████ and ██████

█████ two customers for whom Pace was simultaneously engaging in sales efforts on behalf of Patterson[7]  (Hammell Decl. ¶ 70, Ex. AA);

- An email from Pace to a Henry Schein sales employee on April 1, 2019, suggesting that a customer who had previously considered purchasing a CEREC machine the previous year [while Pace was employed at Patterson] should be invited to a Henry Schein sales event  (*Id.* ¶ 71, Ex. AB);

- An email from Adam Hughes on March 31, 2019, asking Pace to come to a Henry Schein management meeting prepared to share her experience at Patterson  (*Id.* ¶ 72, Ex. AC);

- A spreadsheet showing Pace's "pipeline" of business at Henry Schein, reflecting interactions with numerous Patterson customers  (*Id.* ¶ 73, Ex. AD); and

- An email from Pace to a Henry Schein sales employee on June 7, 2019, indicating that she "convinced" █████████, a Patterson customer who bought equipment from Pace in 2015, to consider an equipment upgrade with Henry Schein.  (*Id.* ¶ 74, Ex. AE.)

While Defendants have largely refused to produce documents related to more of Patterson's customers (*See* ECF No. 250 at 7; ECF No. 252 at ¶¶ 11-12), the documents that Defendants have produced present compelling evidence that Pace has improperly shared information with Henry Schein for many more customers.  Defendants' stubborn refusal to produce the incriminating evidence in its own possession (while simultaneously demanding that Patterson produce evidence of their wrongdoing) demonstrates the lengths

---

[7] Though still employed with Patterson as of the date of this document, the evidence shows Pace was giving sales leads to Henry Schein employees while still employed at Patterson.  (ECF No. 158, Exs. 1, 3, and 4.) Additionally, as of this date, Pace already had signed an employment agreement with Henry Schein (on February 28, 2019).  (*Id.* Ex. 9) It is also highly likely that Hughes, a regional manager, would not have sales leads himself, and instead obtained this information from Pace.

Defendants will go to avoid producing the highly relevant documents that support Patterson's claims and undercut Defendants' position.

Defendants' demand that Patterson produce branch and regional sales for 2018 to 2020 is also plainly improper because Defendants served no interrogatory or RPD requesting this information.  Defendants only sought information and documents regarding Patterson's claimed losses – not about Patterson's sales generally.  When Patterson's counsel pointed this out, Defendants' only response was to indicate that since Patterson had produced one such sales document (in response to a different discovery request), it must produce sales for the entire requested period.  (Hammell Decl. ¶ 56.)  The mere fact that Patterson produced a document evidencing sales in response to another request, causing Defendants to wish they had asked for such information, does not obligate Patterson to produce information never actually covered by any discovery request.

The case law on which Defendants rely simply does not support their argument that Patterson should be ordered to produce this information.  In *Graphic Directions, Inc. v. Bush*, the plaintiff failed to present any evidence demonstrating that lost customers actually did business with the defendant's employer and thus that any damages were caused by the defendant. 862 P.2d 1020, 1025 (Colo. App. 1993).  Here, Patterson has produced substantial evidence to prove this point.  Moreover, by its own admission, Henry Schein has not completed its document production (*See* Defendants' Brief at 7) and more evidence is likely to come to light.

2.   **HSI's Interrogatory Nos. 4 and 9**

Defendants also wrongly contend that Patterson has not properly responded to Interrogatory Nos. 4 and 9, which seek information regarding the economic value of Patterson's Trade Secrets and the damages associated with each of Patterson's Trade Secrets that Defendants misappropriated.

With respect to Interrogatory No. 4, Defendants argue that Patterson must provide a more particular statement of the economic value it ascribes to its Trade Secrets. However, as its response to Interrogatory No. 4 describes, the economic value associated with Patterson's Trade Secrets is derived from the competitive advantage such Trade Secrets provide in the marketplace. (Hammell Decl. ¶¶ 15, 75, Ex. G.) This economic value is not fully definable, as it presents itself in Patterson's existing and potential future sales of dental products. (*Id.*) As Patterson's counsel also explained to Defendants' counsel during the meet and confer process, Patterson has also provided a calculation of the economic value of its Trade Secrets through its damages calculation. (*Id.* ¶ 75.)

None of the cases Defendants cite actually support their argument that Patterson should be required to provide any further response. In each of the cited cases, the Court ordered the plaintiff to define the trade secrets themselves with sufficient specificity (which Defendants do not claim Patterson has failed to do here), not their economic value. For example, in *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598 (D.Minn. 1999), the Court found that a plaintiff's generalized statements in response to a discovery request seeking a list of its trade secrets were unsatisfactory. In *Wilson v. Corning, Inc.*, 171 F. Supp. 3d 869, 883 (D. Minn. 2016), the plaintiff was unwilling to provide specifics

regarding which trade secrets defendants had allegedly misappropriated.  In *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, No. CIV.03-3302(RHK/FLN), 2006 WL 1472860, at *1 (D. Minn. May 26, 2006), aff'd, 491 F.3d 350 (8th Cir. 2007), the plaintiff failed to introduce any evidence at trial specifying its claimed trade secrets.  Conversely, Patterson has provided a particularized accounting of the trade secrets that it believes Defendants have misappropriated in response to Henry Schein's Interrogatory No. 2 and Pace's Interrogatory No. 5.  (Hammell Decl. ¶¶ 11, 15, Ex. E, G.)  Patterson's responses further included a list of specific documents produced by Pace that contain Patterson Confidential and Trade Secret Information, many of which Pace improperly took from Patterson at the end of her employment.  (*Id*. ¶ 11, Ex. E.)  Defendants have failed to show that Patterson's response to Interrogatory No. 4 was deficient.

With respect to Interrogatory No. 9, Defendants falsely contend that Patterson changed its position by directing Henry Schein to its supplemental responses to a similar interrogatory served by Pace.  Patterson's response to Interrogatory No. 9 states that it would provide a calculation of damages, which it did in its Second Supplement to its Initial Disclosures.  (Hammell Decl. ¶ 45, Ex. N.)  In the parties' meet and confer, Patterson's counsel confirmed that the information requested was contained in its damages calculation, and *additionally* pointed Defendants to Patterson's supplemental responses to Pace's discovery.  (*Id*. ¶¶ 11, 76; Ex. E.)  Patterson did not change its position.

Again, Defendants cite no authority that actually supports its demand that Patterson duplicate the responses it has provided to Henry Schein's co-defendant.  In *Mitchell v. Mims*, No. 4:18-CV-00515- DGK, 2019 WL 573435, at *1 (W.D. Mo. Feb. 12, 2019), a

party failed to sign interrogatories under oath at all and its responses merely referred generally to deposition testimony and Rule 26 initial disclosures.  Here, Patterson has referred defendants to its damages calculations and other written discovery in this case. Similarly, the plaintiff in *InCompass IT, Inc. v. Dell Inc.* failed to provide any damages calculation at all, instead stating that damages would be determined by a jury.  No. CV 11-0629 (PJS/JJG), 2012 WL 13027072 (D. Minn. June 29, 2012).  Patterson has provided a calculation of damages and provided the underlying documents, thus complying its discovery obligations.

### 3.    HSI's Interrogatory Nos. 11 and 21

Interrogatory Nos. 11 and 21 respectively seek information about the customers and prospective customer with respect to which Patterson contends it has lost business and a calculation of all monetary relief Patterson claims in this action.  Contrary to Defendants' assertions, Patterson has provided the information requested in these interrogatories by providing its damages calculation.  As to Interrogatory No. 11, Patterson's Rule 26 disclosures identifies each customer by name from whom Patterson contends it has lost business, along with each customer's total sales figure for 2018-2019,  total sales figure for 2019-2020, and the net loss in sales between those two figures. (Hammell Decl. ¶ 45, Ex. N.)  The spreadsheet makes clear the manner in which Patterson's lost sales were calculated. As to Interrogatory No. 21, Patterson's Second Supplemental Initial Disclosures provides a computation of monetary relief sought.

While Defendants argue that they are entitled to more information in response to these interrogatories regarding the "nature and extent" of harms suffered with respect to

each customer, the requests, as written, do not call for such information.  Patterson is not obligated to provide any more information than called for by these requests.  As such, there is no further information to compel for these requests.

4.     **Rule 26 Disclosure Obligations**

Finally, Defendants' argue that Patterson has failed to comply with its Rule 26 disclosure obligations with regard to damages by failing to produce additional evidentiary materials.  This argument is baseless.  As explained previously, Patterson has made voluminous evidentiary materials available to Defendants in the form of customer communications, sales materials, and other produced documents.  Defendants are simply wrong when they state that Patterson has refused to provide any information other than what is contained in its Rule 26 Disclosures.  Additionally, the cases on which Defendants rely once again do not support their arguments.  *See, e.g., InCompass IT, Inc. v. Dell Inc.*, No. CV 11-0629 (PJS/JJG), 2012 WL 13027072 (D. Minn. June 29, 2012) (finding that a plaintiff provided a simple listing of categories of damages, rather than a damage calculation); *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (finding that plaintiff had failed to provide a detailed accounting of his damages calculation at all).

Patterson's compliance with its disclosure obligations has been fully sufficient.  The damages calculation that Patterson provided was based on financial and sales data available at Patterson for Pace's customers from whom Patterson has lost sales.  The evidentiary materials "bearing on the nature and extent of injuries suffered" have been provided in the form of documents produced in discovery, in addition to the information contained in

Defendants' own files. To the extent Defendants apparently want Patterson to generate additional materials related to its lost sales, there is no basis for such a demand. Patterson has no obligation to produce materials not kept in the ordinary course of its business or to generate documents that do not exist just to satisfy Defendants' requests. *See Edeh v. Equifax Info. Servs.*, LLC, No. CIV. 11-2671 SRN/JSM, 2013 WL 1749912, at *14 (D. Minn. Apr. 23, 2013), aff'd, 291 F.R.D. 330 (D. Minn. 2013) (declining motion to compel budget projections that could be "extracted" from the defendant's records because the documents did not actually exist); *Geiger v. Z-Ultimate Self Def. Studios*, LLC, No. 14-CV-00240-REB-NYW, 2016 WL 11697106, at *5 (D. Colo. June 7, 2016) (finding parties do not have to generate documents "from their general ledger," such as profit and loss statements).

As further evidence of the sufficiency of Patterson's Rule 26 Disclosures, Patterson's disclosures far surpass Defendants' Rule 26 disclosures. Henry Schein served its Amended Initial Disclosures on March 13, 2020 and stated that it would be unable to provide a calculation of its alleged damages, which includes its attorney's fees, as discovery was ongoing. (Hammell Decl. ¶ 61, Ex. W.) More than six months later, Henry Schein has still not provided a calculation of its damages. (*Id.* ¶ 77.) Instead, it has merely produced 14 invoices from Madel PA, Henry Schein's local counsel, and 10 invoices from Moses & Singer, Henry Schein's lead counsel, for dates and services which have been redacted.[8] (*Id.* ¶¶ 77-78, 81, Exs. AF, AI.) Given Defendants' own Rule 26 disclosures,

---

[8] The redactions included the dates on the invoices, which is plainly improper. The dates upon which Madel PA and Moses & Singer rendered services are not protected by

they cannot legitimately challenge Patterson's disclosures, which are much more detailed and extensive.

### C.   DEFENDANTS CANNOT DEMONSTRATE GOOD CAUSE FOR A PROTECTIVE ORDER AS THE SCHEDULING ORDER IS REASONABLY INTERPRETED TO ALLOW BOTH SIDES EQUAL DISCOVERY.

Defendants have not shown good cause to prohibit Patterson from seeking its second and third sets of discovery to Defendants, a requisite showing for a protective order under Rule 26(c). *See Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). The party moving for a protective order "bears the burden of demonstrating the necessity of a protective order." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013). "To make this showing, the moving party cannot rely on broad or conclusory allegations of harm." *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 757 (D. Minn. 2008) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). As Defendants themselves acknowledge, "when determining whether to issue a protective order, courts apply a "balancing test" to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue. *See Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 (MJD/LIB), 2014 WL 10714011, at *12 (D. Minn. Dec. 5, 2014) (Brisbois, J.)

Here, Defendants have failed to make the requisite showing, as they cannot demonstrate any undue burden associated with replying to the discovery nor that Patterson lacks an interest in the discovery at issue. As described above and in Patterson's Motion,

---

the attorney-client privilege and the redactions obstruct Patterson's ability to evaluate Henry Schein's claim for damages.

Patterson's most recent discovery requests to both Pace and Henry Schein are both highly relevant to Patterson's claims and within the equal discovery limits understood by the parties over the past year.  Patterson's service of these discovery requests in August was also fully consistent with the parties' communication and actions up to that point, as both sides had served over 30 RPDs and 30 Interrogatories and provided responses and answers according to that understanding.

Defendants themselves admit that, while they objected to Patterson's February 2020 discovery requests as being "over the limit," they still responded to the requests and did not raise any concerns regarding numerical limitations with Patterson. (*See* Defendants' Brief at 35 n. 9.)  In fact, counsel for Defendants agreed with Patterson's interpretation of the scheduling order when asked about it in January 2020 (*See* ECF No. 252 at ¶ 38.)  Henry Schein also previously argued to this Court that all parties should have "equal" discovery opportunities.  (ECF No. 129 at 7.)  If Defendants truly believed that the Amended Scheduling Order limited Patterson to a combined 30 interrogatories and 30 RPDs to both Defendants, they should have raised that argument when initially responding to Patterson's requests over that number, not many months later.

Furthermore, Defendants' motion for protective order is directly contradicted by their instant Motion to compel.  If their interpretation of the Scheduling Order is correct, then Defendants are precluded from demanding further responses from Patterson, because Defendants have already exceeded 30 discovery requests for "any side."  Defendants cannot have it both ways, seeking to require Patterson to provide further responses to its discovery while refusing to respond to Patterson's requests -- such an outcome would be

clearly unfair and prejudicial to Patterson, especially in light of its reasonable interpretation of the Scheduling Order through the parties' conduct over the previous year. Therefore, the Court should deny Defendants' request for a protective order.

### D. DEFENDANTS FAIL TO SHOW GOOD CAUSE TO DE-DESIGNATE PATTERSON'S RULE 26 DISCLOSURES AS ATTORNEY'S EYES ONLY.

Defendants have not shown good cause to de-designate Patterson's Rule 26 Disclosures from their current designation as AEO -- that designation should be retained. Under the Protective Order, any party may designate information in this matter as AEO "to protect highly sensitive, private, or confidential nature, which if disclosed would likely cause substantial harm to the producing Party or producing non-party." (ECF No. 57 at 4.) The AEO designation is defined to cover "Confidential Information that is more sensitive or strategic than other Confidential Information, the *disclosure of which is likely to significantly harm* a person or that *person's competitive position*,...[and] may include, but is not limited to: trade secrets, business plans, strategic plans, *pricing and financial information, customer and prospective lists*, product design and development information, and other Information protected by law." (*Id*. at 2.) When considering the level of protection to be provided to documents under a protective order and where the parties are commercial competitors, courts in Minnesota have sought to balance the risk of disclosure against the risk that protection will impair the prosecution or defense of the other party's claims. *See Tri-State Grease and Tallow Co., Inc. v. Milk Specialties Company*, 2012 WL 13029572 at *4 (D. Minn. Apr. 13, 2012) (citing cases). Documents may retain their protection if the party seeking protection  provides "specific facts demonstrating that

- 30 -

protection of information is necessary, as opposed to 'stereotyped and conclusory statements." *Krueger v. Ameriprise Financial, Inc.*, 2015 WL 224705 at *6-*8 (D. Minn. Jan. 15, 2015) (finding trade secret materials properly withheld where a party demonstrated specific harms to their business that could result).

Here, the information in Patterson's Disclosures designated as AEO is exactly the type of information that the Protective Order's AEO provisions were intended to protect. The disclosure of Patterson employees' addresses and contact information would be significantly harmful to these employees' expectation of privacy, particularly considering that Patterson is represented by counsel and Henry Schein has sought to convince multiple Patterson employees to leave the company and join Henry Schein. Providing Henry Schein with Patterson employees' personal contact information, particularly when Henry Schein did not even reciprocally provide Patterson with such information, would improperly invade Patterson employees' privacy.

Additionally, Patterson's Rule 26 Disclosures, including Exhibit A thereto, contain highly sensitive and confidential commercial information. This includes the names of customers, annual sales figures, and profit margins. (Carson Decl. ¶ 3.) Patterson and Henry Schein are fierce competitors in the dental equipment and supply industry and the disclosure of such information would put Patterson at a serious competitive disadvantage. (*Id.* ¶ 4.)

Indeed, Pace's own solicitation efforts regarding Patterson's customers in the past year and a half indicates that she and her sales team have no qualms about using Patterson's Confidential Information and trade secrets to pursue Patterson's customers on behalf of

Henry Schein.  For example, documents produced by Henry Schein indicate that shortly after her arrival at Henry Schein, Pace sent an email to a Field Sales Consultant that she had done a demonstration for ▮▮▮▮▮▮▮▮ while at Patterson and "it might be a good opportunity for Henry Schein."  (Hammell Decl. ¶ 79, Ex. AG.)  Two sales "pipeline" spreadsheets produced by Henry Schein demonstrate meetings that Pace held with multiple Patterson customers seeking to solicit their business for Henry Schein.  (*Id*. ¶¶ 73, 80, Exs. AD, AH.)  Providing Pace and her team, as well as other sales employees at Henry Schein with free access to this list of customers, all of whom Pace worked with during her time at Patterson, would be highly detrimental to Patterson's efforts to maintain the business of these customers in the face of Defendants' ongoing misappropriation efforts. (Carson Decl. ¶¶ 5-6.)

Further, Defendants have not demonstrated that they have good cause to de-designate the Disclosures.  First, under the terms of the Protective Order, Defendants' damages expert would have access to the documents, as would in-house counsel and outside counsel.  (*See* ECF No. 57 at 6-7.)  Second, there is nothing to prevent Defendants and their counsel from asking Henry Schein employees and Pace about the customers named in Patterson's Rule 26 Disclosure, which is arguably all that they would need to do, without referring to the fact that the customers were Patterson customers or that Patterson lost sales from them.  Counsel for Patterson has repeatedly informed counsel for Defendants of this fact, and even offered to consider a proposed set of Henry Schein employees that Defendants wished to have view the information.  Defendants ignored this proposal altogether. Finally, Defendants' own proposal would be insufficient to protect

- 32 -

Patterson's confidential information from competitive harm, as it would still permit Henry Schein employees to know that these customers were Patterson customers from which it lost sales. This information in the hands of Patterson's main competitor could present a prime opportunity for further tortious interference by Defendants. As such, Defendants have not shown good cause to de-designate Patterson's Rule 26 Disclosures and their motion should be denied.

## IV.   <u>CONCLUSION</u>

Defendants' motion should be denied in full. Patterson has complied with its discovery obligations and the supplementation sought by Defendants is either redundant or unnecessary, and inconsistent with Defendants' position regarding discovery limitations. Patterson has also provided all that is required by Rule 26 in support of its damages, as is abundantly clear by comparing Patterson's Rule 26 disclosures to Defendants' own disclosures. Further, Defendants have not shown good cause for a protective order prohibiting Patterson from seeking its most recent discovery, as the parties' mutual understandings of the Scheduling Order permitted Patterson to serve this discovery, and Defendants responded to earlier discovery thus contradicting their own position. Finally, Defendants have not shown good cause to de-designate Patterson's Rule 26 Disclosures, as Defendants have alternate ways of asking witnesses about the information, plus the information is highly confidential and would present competitive harm to Patterson if disclosed. For these and all the reasons discussed herein, the Court should deny Defendants' Motion.

Dated:     November 3, 2020          **JONES DAY**

By: */s/ Joseph W. Hammell*
Joseph W. Hammell (MN No. 0172698)
jhammell@jonesday.com
Kristin K. Zinsmaster (MN No. 0391299)
kzinsmaster@jonesday.com
Rebecca E. Kline
rkline@jonesday.com (MN No. 0401277)
90 South Seventh Street, Suite 4950
Minneapolis, MN  55402
612.217.8800

*Attorneys for Plaintiff*