IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

Patterson Dental Supply, Inc.,

               Plaintiff,                    Case File No. 19-cv-01940-JNE-LIB

v.

Daniele Pace and Henry Schein, Inc.,

               Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Defendants Daniele Pace ("Pace") and Henry Schein Inc. ("HSI" or "Schein," and collectively, "Defendants") submit this Memorandum of Law in opposition to the Motion of Plaintiff Patterson Dental Supply, Inc. ("Plaintiff" or "Patterson") to Compel Discovery ("Plaintiff's Motion").   This Memorandum should be read in conjunction with the Declaration of Stephen Premo, dated November 3, 2020, submitted herewith.   In addition, Defendants respectfully ask the Court to consider the arguments and papers submitted by Defendants in support of Defendants' Motion to Compel Discovery, For a Protective Order, and to Supplement and De-Designate Disclosures ("Defendants' Motion") (ECF 261), which was filed on October 27, 2020, and are related to the subject matter hereof.

## INTRODUCTION

The Amended Scheduling Order[1] is crystal clear: "no more than 30 Interrogatories [and] 30 Requests for Documents … shall be served **by any side**."  Stated differently, Plaintiff can serve no more than 30 Interrogatories and 30 Requests for Documents; Defendants can serve, collectively, no more than 30 Interrogatories and 30 Requests for Documents.  Defendants moved to amend this provision, which was part of the original Pretrial Scheduling Order (ECF 58), and to change this language from 30 requests "per side" to "per party."  Plaintiff *opposed* that change, noting that the Pretrial Scheduling Order permitted 30 requests.  **Plaintiff expressly objected to Defendants' Motion to**

---

[1] ECF 196; entered June 18, 2020.  Capitalized terms have the same meaning as those defined in Defendants' Motion (ECF 263).

**Amend on this point, and opposed any change in this term of the Pretrial**

**Scheduling Order.** *Id*:

> Counsel for Defendants have additionally sought to expand … the written
> discovery they can serve by re-wording the Scheduling Order to permit
> discovery "per party" rather than "per side," as currently stated. By doing
> so, HSI and Pace would be able to collectively … serve sixty
> Interrogatories, Requests for Production, and Requests for Admission.

(ECF 136).  The Court denied HSI's request[2], and in the Amended Scheduling Order

issued thereafter, expressly directed, in plain language, that no more than 30 discovery

requests "shall be served by ***any*** side" (emphasis added).  That directive was not just to

Defendants' side; it was to all sides.  Patterson never cross-moved to further amend that

operative language.

Thus, when Patterson served additional discovery requests in August 2020, it was

undeniably aware of the numeric limitation in place (which had been issued by the Court

just two months earlier), and was well aware that it had already served discovery requests

in excess of that limitation.  Plaintiff therefore knew that it was serving discovery in clear

violation of the Amended Scheduling Order.

Following entry of the Amended Scheduling Order, and its provision limiting

written discovery to 30 "per side," Defendants have not served additional written

discovery.  In justifiable reliance on the unequivocal language in the Amended

---

[2] The Court denied HSI's application for additional written discovery after noting that
Defendant's counsel did not comment at the motion hearing, on the additional written
discovery sought by HSI in its papers.  HSI did not knowingly waive its request for
additional written discovery, having fully briefed the issue in its papers, but did not move
to reargue or appeal as to this point.  ECF 195.

Scheduling Order, Defendants forgone propounding additional discovery (even though each has served less than 30 Interrogatories and 30 Requests for Production), believing that doing so would violate the Court's order. Declaration of Stephen Premo ("Premo Decl."), ¶ 16.

On the other hand, Patterson now has served an additional round of discovery, despite the fact that it contravenes the Amended Scheduling Order.  Plaintiff attempts to justify its excessive violative discovery by contorting and brazenly misinterpreting the plain language of the Amended Scheduling Order, misconstruing the history of discovery in this case, and falsely suggesting that the parties tacitly understood that the limitation was not what the language says.

Nothing could be further from the truth.

At no time did Defendants, or their counsel, ever agree or stipulate to unilaterally revise the language in the Pretrial Scheduling Order, without the Court's permission. Moreover, once the Court denied Defendants' request to amend (which, again, Patterson *opposed*), any possible uncertainty was eliminated, and Defendants accepted the re-affirmed numeric limit.

Once Plaintiff served its August 2020 discovery requests, Defendants timely and properly objected, as these discovery requests violated the terms of the Amended Scheduling Order.

At any time during the last 13 months Plaintiff could have moved – as Defendants did – to ask the Court to modify the language in the Pretrial or Amended Scheduling Order, to permit more expansive discovery.  Plaintiff never did so. And now, just two

4

weeks before the close of document discovery, Patterson is attempting to gain an improper and unfair advantage by seeking after-the-fact permission to file excessive discovery, six months after it opposed Defendants' request to engage in additional written discovery.  Patterson's change of heart to increase discovery only for itself, and not in a manner that would allow for equitable discovery, should not be condoned.   Defendants' timely and proper objections should be sustained.[3]

**Redacted Documents**

In its motion, Patterson also seeks access to certain redacted information and asserts that, in light of the Protective Order herein (ECF 57), no redactions should have been made.  In fact, the Protective Order itself, expressly contemplates that additional protection may be required for certain material. *Id.*, ¶11.  The eight (8) documents at issue are such documents as to which Defendants believe additional protection is necessary.  To give context, Defendants have collectively produced over 200,000 documents herein, and reviewed thousands of other documents, and additional protection is sought for a total of eight (8) documents.  Thus, Plaintiff's accusations are misplaced. It is Plaintiff who is abusing the discovery process, misrepresenting the past, and causing unnecessary but significant, legal fees and costs.

---

[3] On October 27, 2020, Defendants filed Defendants' Motion, seeking a protective order against Patterson's Second Set to HSI and Third Set to Pace. ECF 261. That relief should be granted, and the Court should enter into a Protective Order concerning this discovery.

## FACTUAL BACKGROUND

For the facts relevant to this Motion, Defendants respectfully refer to and incorporate by reference the Factual Background contained in their Memorandum of Law in Support of Defendants' Motion (ECF 263).  The key facts are as follows:

## I.   <u>DISCOVERY TO DATE</u>

On September 26, 2019, the Court issued the Pretrial Scheduling Order (ECF 58), stating that "no more than 30 Interrogatories (counted in accordance with Rule 33(a), Federal Rules of Civil Procedure), 30 Requests for Documents (pursuant to Rule 34), and 30 Requests for Admissions (pursuant to Rule 36) **shall be served by any side**." (emphasis added).  Plaintiff served Patterson's First Set to Pace in August 2019.  ECF 265, Declaration of Abraham Y. Skoff ("Skoff Decl."), Exs. A and B.  Defendant Pace's First Set to Patterson was served in November 2019. *Id.,* Exs. C, D and E.  HSI was named as a party defendant on December 20, 2019 (ECF 80), when Plaintiff filed an amended complaint.

On January 24, 2020, the parties' counsel held a meet-and-confer via telephone concerning a discovery dispute between Pace and Patterson, a dispute that was not directed to any discovery on HSI.  The call involved Joseph Hammell and Kristin Zinsmaster for Plaintiff, and Stephen Premo, who was counsel for Defendant Pace and local counsel for HSI.  Premo Decl., ¶ 10.  Contrary to Plaintiff's representations, the parties did not reach any agreement that they could serve in excess of 30 Interrogatories/RFPs.  *Id.*, ¶ 12. In fact, on the call, Mr. Hammell raised an issue not on the agenda, and stated that he believed the Pretrial Scheduling Order could be interpreted

to mean that Patterson could serve 60 total discovery requests, and inquired about Defendants' position concerning same. *Id.*, ¶ 11.  In response, Mr. Premo, who did not have a copy of the order at the time, thought that "seem[ed] right," but stated "let me take a look at that and think about it," *Id.* Ex. 3 at minute 18:25, to which Mr. Hammell stated, "if you want to think about it that's fine, I'm not going to try to jam you to make you make a decision on the spot." *Id*., ¶ 12; *Id.* Ex. 3 at minute 19:21.  Following that conversation, the parties did not discuss the issue again. *Id.*, ¶ 12.  The parties ***never*** agreed to Mr. Hammell's proposed interpretation, which appeared to be contrary to the plain language of the Order; nor did they agree to override the language of the Pretrial (or Amended) Scheduling Orders.  *Id.*, ¶ 12.  The parties never executed, stipulated, or memorialized any understanding concerning the number of discovery requests, because no mutual understanding was ever reached.  *Id.*, ¶ 12.[4]

On January 22, 2020, HSI served HSI's First Set to Patterson.  Skoff Decl., Exs. J and K.  In February 2020, Pace served Pace's Second Set to Patterson, and Patterson, in

---

[4] Defendants moved to amend the Pretrial Scheduling Order in March 2020, to permit additional depositions and additional written discovery.  If, as Patterson now contends, the parties had reached an understanding as to the number of discovery that could be served, then Defendants would not have needed to make such a motion to amend that limitation.  Moreover, if such an agreement was reached, then why would Patterson have opposed the portion of the request seeking to modify the discovery limitation to conform with the parties' purported understanding?  And why wouldn't Patterson have stated in its opposition to that motion that the parties had already reached an understanding on the limitation? It is because no understanding was ever reached, and contrary to Patterson's contentions, the parties have not "acted in accordance with the understanding that each party could serve 30 requests on each opposing party." *See* Patterson's Memorandum in Support of Plaintiff's Motion ("Patterson Br."), ECF 250, p. 16.

turn, served Patterson's First Set to HSI and Patterson's Second Set to Pace. *Id.*, Exs. N, O, P, and Q.

In response to Patterson's Second Set to Pace, Pace objected to each Interrogatory as over the allowable limit, but nevertheless, answered. ECF 252, Declaration of Joseph Hammell in Support of Motion to Compel Discovery from Defendants ("Hammell Decl."), Ex. 1. Similarly, HSI tendered objections to Patterson's First Set to HSI as both the Interrogatories and RFPs "exceed the 30 [interrogatories/RFPs] permissible under the Court's September 26, 2019 Pretrial Scheduling Order."[5] Skoff Decl., Exs. R and S. Despite preserving its objections, HSI answered the discovery.

As of the end of February 2020, by Plaintiff's numbering, Plaintiff had served 40 numbered Interrogatories and 47 numbered RFPs,[6] having served one set of discovery on HSI, and two sets on Pace. A review of Plaintiff's discovery demands shows that they grossly exceed the number permitted by the Court. As served and as numbered by Plaintiff, Plaintiff served the following:

| Chart A - Patterson's Requests for Production ("RFPs") | | |
|---|---|---|
| **RFP Set** | **Date Served** | **Number of RFPs (as numbered by Plaintiff)** |
| Patterson's First Set of RFPs to Pace | August 19, 2019 | 19 RFPs |

---

[5] Given these objections, Patterson was aware that any subsequent discovery would be in excess and violation of this order.

[6] This is based on Patterson's numbering, which significantly undercounts the actual number Patterson served, due to numerous requests with discrete subparts.

| Patterson's First Set of RFPs to HSI | February 4, 2020 | 26 RFPs |
| Patterson's Second Set of RFPs to Pace | February 5, 2020 | 2 RFPs |
| Patterson's Second Set of RFPs to HSI | August 3, 2020 | 4 RFPs |
| Patterson's Third Set of RFPs to Pace | August 3, 2020 | 1 RFPs |
| **Total** | | **52 RFPs** |

| Chart B - Patterson's Interrogatories | | |
|---|---|---|
| **Interrogatory Set** | **Date** | **Number of Interrogatories (as numbered by Plaintiff)** |
| Patterson's First Set of Interrogatories to Pace | August 19, 2019 | 18 Interrogatories |
| Patterson's First Set of Interrogatories to HSI | February 4, 2020 | 19 Interrogatories |
| Patterson's Second Set of Interrogatories to Pace | February 5, 2020 | 3 Interrogatories |
| Patterson's Second Set of Interrogatories to HSI | August 3, 2020 | 9 Interrogatories |
| Patterson's Third Set of Interrogatories to Pace | August 3, 2020 | 2 Interrogatories |
| **Total** | | **51 Interrogatories** |

These charts reflect the number of discovery demands based on ***Plaintiff's*** numbering. But when fairly considering discrete subparts, even a conservative calculation shows that Patterson served far more. For example, Patterson's Interrogatory No. 3 to Pace (in Patterson's First Set to Pace), demanded that Pace identify "all facts, circumstances, and/or reasons for your failure to admit" any allegation in the Complaint; "all persons with knowledge relating to such allegation" and "the knowledge

9

such person possesses"; "all documents relating to such allegation"; and "any communication, written or all . . . relating to such allegation." ECF 265, Skoff Decl., Ex. B.  As Pace had made at least 69 denials in her Answer, this constituted at least 69 Interrogatories, *see* Answer (ECF 29), multiplied by four discrete subparts, for a total of 276 Interrogatories.  Even after the parties conferred and whittled down the scope of this improper interrogatory, Patterson sought Pace's supplementation for denials in five separate paragraphs in her Answer. *See* Parties' Joint Letter to Judge Brisbois, at 1. (ECF 123)  Further, at least four additional Patterson Interrogatories asked Pace to identify and describe certain subject matter *and* asked Pace to identify documents related to the same. *Id*., Ex. B, Interrog. Nos. 9, 10–12. *See Superior Indus., LLC v. Masaba, Inc.*, No. 10-CV-764(DWF/LIB), 2010 WL 11469569, at *2 (D. Minn. Dec. 27, 2010) (such interrogatories contain discrete subparts).  Similarly, Patterson's RFP No. 15 to Pace (in Patterson's First Set to Pace) demanded that Pace produce all documents she was asked to identify in Patterson's Interrogatories. Patterson had asked Pace to identify documents in response to nine separate Interrogatories. *Id.*, Exs. A and B.  Thus, RFP No. 15 alone constituted 9 separate subparts.

With respect to discovery served on HSI, Patterson served an identical blockbuster to HSI. *See* Skoff Decl., Ex. N (Patterson Interrog. No. 2).  As HSI made at least 113 denials in its Answer, *see* Henry Schein Answer (ECF 94), this constituted at least 113 Interrogatories, multiplied by four discrete subparts, for a total of 452 Interrogatories. Here again, even after the parties narrowed the scope of this improper interrogatory,

4499370 007996.0285

Patterson sought HSI's supplementation for its denials in *eight* separate paragraphs. *See* Skoff Decl., Ex. T (HSI's Supp. Resp. to Pl.'s Interrogs., at 10–11 (Aug. 27, 2020)).

Patterson's Interrogatory No. 4 to HSI actually contains at least six discrete subparts and, because it seeks responsive documents that Pace gave HSI *or* that otherwise came from Patterson, it should be counted as 12 Interrogatories. *See* Skoff Decl., Ex. N. Patterson's Interrogatories Nos. 6 and 7 to HSI ask HSI to identify and describe certain subject matter *and* asked HSI to identify documents related to the same, meaning these should be counted as four interrogatories.  *See* Skoff Decl., Ex. N. And finally, Patterson's RFP No. 7 to HSI contains at least 10 discrete subparts. *See* Skoff Decl., Ex. O (seeking documents concerning "[1] the termination of Daniele Pace's employment with Plaintiff, [2] Daniele Pace's duties and responsibilities as an employee of Plaintiff, Daniele Pace's obligations to Plaintiff, [3] Daniele Pace's contract with Plaintiff, [4] Communications from Plaintiff or Plaintiff's attorneys regarding Daniele Pace, [5] Plaintiff's documents or data to which Daniele Pace had access, [6] Daniele Pace's knowledge of and involvement in Plaintiff's business, [7] Daniele Pace's knowledge of and involvement with Plaintiff's customers, [8] Daniele Pace's knowledge of and involvement with Plaintiff's prospective customers, [9] Daniele Pace's knowledge of and involvement with Plaintiff's product demonstrations, [10] and/or Daniele Pace's knowledge of and involvement with Plaintiff's sales proposals"). Thus, even a conservative calculation of the amount of discovery Patterson actually served in this matter shows it served at least *69 Requests for Production* and *84 Interrogatories* on Defendants, grossly exceeding all allowable numbers.

II.    **MOTION TO AMEND**

On March 25, 2020, the parties jointly moved to amend the Pretrial Scheduling Order ("Motion to Amend").  ECF 127.  As part of the Motion to Amend, Defendants sought to amend the Pretrial Scheduling Order to permit "any party" – as opposed to "any side" – to serve thirty (30) RFPs, thirty (30) Interrogatories, and thirty (30) RFAs. ECF 127.  **Plaintiff objected to this portion of the Motion to Amend and opposed** this relief sought by Defendants.  *Id.*   In opposing, Plaintiff took the position that the Court should not amend the Pretrial Scheduling Order to allow the Defendants to collectively serve 60 RFPs and 60 Interrogatories.  Through its opposition, Plaintiff acknowledged what it desperately seeks to avoid admitting now – that the plain language of the Pretrial (and Amended) Scheduling Order limits discovery to a total of 30 RFPs and 30 Interrogatories per side.

On, April 13, 2020, Plaintiff made a motion to compel discovery of Defendant HSI ("Patterson's Second Motion to Compel").[7]  ECF 155.  As part of Patterson's Second Motion to Compel, it asked the Court to order Defendant HSI to produce a large amount of discovery concerning over 300 customers.  HSI opposed the motion, and proposed in its meet-and-confer that HSI produce discovery as to the 11 customers previously identified by Patterson, and six additional customers of Patterson's choice.

On June 17, 2020, the Court issued a decision in response to the Motion to Amend and Patterson's Second Motion to Compel.  ECF 195.  As noted above, the Court denied

---

[7] Patterson's first motion to compel was brought against Defendant Pace. ECF 85.

the request to modify the discovery numeric limit; the Court also denied Plaintiff's Second Motion to Compel with regard to several discovery requests, and ordered HSI to produce discovery as to the 11 customers and six additional customers to be identified by Patterson, in accordance with HSI's offer to do so. ECF 195, p. 49.  On June 18, 2020, the Court issued the Amended Scheduling Order, re-affirming the numeric limit in the Pretrial Scheduling Order: "That no more than 30 Interrogatories [and 30 RFPs] **shall be served by any side**." ECF 196 (emphasis added).

On June 23, 2020, Patterson identified six additional customers, and HSI then produced documents concerning those six, in addition to the 11 previously identified. Skoff Decl., Ex. W.

Despite the fact that Plaintiff expressly opposed Defendant's Motion to Amend the numeric limit on written discovery requests, and despite the fact that, by its own numbering, Patterson had already exceeded the permissible 30 Interrogatories/RFPs, in August 2020, Plaintiff served Patterson's Second Set to HSI, and Patterson's Third Set to Pace (hereinafter, the "August 2020 Discovery").  Skoff Decl., Exs. X, Y, Z and AA. Plaintiff did <u>not</u> seek leave of Court to serve these demands, which clearly are in excess of the Amended Scheduling Order.

On September 2, 2020, Defendants served timely objections to the August 2020 Discovery. Skoff Decl., Exs. BB, CC, DD and EE.  Among the objections, HSI and Pace asserted specific objections that the new discovery violated the limits of the Amended Scheduling Order.

13

On September 3, 2020, Schein served Supplemental Responses to Patterson's First Set to HSI. Skoff Decl., Exs. T and U.

On October 27, 2020, Defendants made a motion for, *inter alia*, a protective order over Patterson's August 2020 Discovery. ECF 261.  The current end date for discovery is November 15, 2020.

## III.   MEET AND CONFER PROCESS

For a complete recitation of the meet-and-confer process, Defendants refer to the Premo Declaration, submitted herewith, and the Skoff Declaration, submitted in support of Defendants' Motion. ECF 265.

## ARGUMENT

## I.   PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO RESPOND TO DISCOVERY REQUESTS SHOULD BE DENIED

### A.   Plaintiff's Discovery is in Violation of, and Grossly in Excess of, the Amended Scheduling Order

The clear language of the Amended Scheduling Order permits 30 Interrogatories and 30 RFPs to be served "per side." Indisputably, Patterson's August 2020 Discovery exceeds this limit and violates that order. Defendants' timely objections on this basis should be sustained.

In an effort to side-step this limitation, Patterson argues that the Amended Scheduling Order, "reasonably interpreted, means Patterson can serve 30 interrogatories, 30 [RFPs,] and 30 RFAs on each Defendant." Patterson Br., p. 2.  This is a contorted and overt misconstruction of the Amended Scheduling Order, which clearly states the limit

applies "per side."  The Order does not say the limit applies "per side on each party" or "per side on each Defendant."  Patterson's proposed "interpretation" should be rejected.

Patterson next argues that the parties' conduct reflects a mutual understanding that both sides could serve a total of 60 interrogatories and 60 RFPs. Patterson Br., p. 4.  This is not true.  As discussed above, Defendants' counsel never agreed to override the express language of the Pretrial (or Amended) Scheduling Order or to interpret the language to permit double the discovery than what the language actually says. Premo Decl., ¶ 12. Patterson's representations to the contrary are false, and the recording made by counsel for Defendants amply demonstrates this.  *See generally* Premo Decl. Ex. 3 at minute 17:18–21:10.  Counsel once discussed the limit – a topic which was not on the parties' meet and confer agenda, and Defendants' counsel, Stephen Premo, stated that he would look into the issue; Plaintiff's counsel, Joseph Hammell, agreed that he is "not going to try to jam [Defendants' counsel] to make [him] make a decision on the spot."  *Id*., ¶ 12; *Id.* Ex. 3 at minute 19:21.

Plaintiff mischaracterizes what occurred during that conversation, and misrepresents to the Court that an agreement had been reached. *See* Patterson Br., pp. 15-16 ("In January 2020 when Patterson's counsel raised the issue, Defendants' counsel agreed with this interpretation of the Scheduling Order.").  No agreement or understanding was ever reached. Premo Decl., ¶ 12; *see id.* Ex. 3 at minute 17:18–21:10. Patterson has pointed to no e-mail, stipulation or other writing memorializing any agreement (because none was ever agreed to).  Indeed, the record evidences that an agreement was never reached; Defendants felt the need to move to modify the language

15

in the Pretrial Scheduling Order, because the order did not permit the discovery sought, and Plaintiff ***opposed*** that request.  If an understanding had been reached, Plaintiff wouldn't have opposed Defendants' motion, and the parties would have indicated to the Court that they are in agreement on the issue, and that Defendants are entitled to the additional discovery.[8]

A party served with excessive discovery demands should promptly object on that basis.  *See generally Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("[w]hen a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order").  "A failure to make a timely objection to a request for production or interrogatories results in a waiver of any otherwise-valid objections." *Superior Indus., LLC*, 2010 WL 11469569, at *9.  If a party does not timely object to discovery that exceeds the allowable number, they waive their

---

[8] The statement in Patterson's Br. that they opposed the "per party" limitation modification only because it would increase the number of depositions should be disregarded. Patterson Br., p. 6, FN 4.  Patterson could have stated, in its opposition, that it opposed any increase in the number of depositions, but was in favor of additional written document discovery.  It never did.  Further, Patterson could have stated that the original Scheduling Order *already permitted* Henry Schein, in addition to Pace, to serve its own set of discovery, according to Patterson's January 24, 2020 construction of the Scheduling Order. It never did.  Instead, Patterson, in a total flip-flop, argued that allowing the amendment sought by Defendants would allow Defendants to "serve more written discovery than contemplated by the Scheduling Order." Pl.'s Memo. in Opp. to Defs.' Mot. to Amend Scheduling Order, at 14. [ECF 136.]  In other words, Patterson opposed the entirety of the modification because it wanted to hamstring Defendants' efforts to serve additional written discovery. Only now, seven months later, Patterson is taking the opposite position in an effort to extract an unfair advantage before the discovery cutoff date.

objection to that discovery demand. *See* Fed. R. Civ. P. 33(b)(4) ("[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown"); *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. CV 11-820 (ADM/JSM), 2015 WL 12781248, at *4 (D. Minn. Oct. 14, 2015) ("Schwendimann never objected that AACI had exceeded the scope of allowable interrogatories …. As a result, Schwendimann's objection on this ground was waived.").[9]

Patterson argues that Defendants waived their right to assert a numerosity objection to the August 2020 Discovery, because in prior sets – served months earlier, in February 2020, before the Amended Scheduling Order – Defendants objected but answered. Patterson Br., p. 16. According to Patterson, because Defendants answered (while preserving their objections to) earlier requests in the case that were over the limit, Defendants have waived their numerosity objection to all future discovery sets. But Patterson's argument is not supported by any authority or law.

If a party answers a discovery device while asserting and preserving its numerosity objection, or even if a party waives a numerosity objection to a discovery device and

---

[9] There is a split of federal authority on whether answering some discovery requests within a single set, could result in waiver of a numerosity objection to the rest of the requests within that set. *See Holmes v. Trustees of Purdue Univ.*, No. 4:06 CV 114, 2008 WL 656263, at *1 (N.D. Ind. Mar. 5, 2008) ("Further, the proper method for objecting to a set of interrogatories that exceeds 25 is not completely clear. The rule may be read to suggest that a party may answer the first 25 questions and then object to the balance… Other courts have suggested that to answer any interrogatory in the offending set may result in waiver…."); *see also Nix v. Holbrook*, No. CIV.A. 5:13-02173, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015). This split in authority is not at issue in this case, as Defendants fully objected to, and did not answer, the entirety of Patterson's August 2020 Discovery.

answers those requests, it does not waive that objection to all future sets of discovery.  If

adopted, such a rule would reward a party that serves excessive discovery, by entitling

them to serve endless future sets, and prohibiting the receiving party from asserting future

numerosity objections.  *See e.g., Paananen v. Cellco P'ship*, No. C08-1042 RSM, 2009

WL 3327227, at *4 (W.D. Wash. Oct. 8, 2009) ("a rule that a numerosity objection is

waived after any interrogatory response fails to account for situations where parties

submit their interrogatories in multiple sets. If a responding party answers an initial set of

15 interrogatories and is then served with 11 more, it would defy logic to hold that that

party has waived its objection to the numerosity of the new set."); *see also Wood v.

Nwachuku*, No. CV 10-1067 WJ/WPL, 2012 WL 13081224, at *2 (D.N.M. Jan. 4, 2012).

In *Regents of Univ. of Minnesota v. United States*, No. CV 06-5084 (RHK/JSM),

2008 WL 11347732, at *1 (D. Minn. Jan. 22, 2008), this Court rejected the argument that

answering a prior set of discovery can result in waiver of a numerosity objection in a

subsequent set.  In *Regents,* the defendant served two sets of interrogatories on plaintiff

("U of M").  U of M answered the first set of interrogatories (while asserting a general

numerosity objection), and then objected to the entirety of the second set of

interrogatories.  On its motion to compel responses to the second set, defendant argued

that "by answering the first set of interrogatories in their entirety, the U of M had waived

any objection to the limit of interrogatories" for the second set.  The Court disagreed,

stating that "the [defendant] proceeded at its own peril when it did not obtain permission

from the Court to serve the second set," and denied the motion to compel responses to the

second set.

Here, Defendants' answers to prior sets (which preserved objections), are not a waiver of Defendants' ability to propound a numerosity objection to a later set, especially when that set – the August 2020 Discovery – was served after the Court re-affirmed the discovery limit in the Amended Scheduling Order. Therefore, when Patterson served the August 2020 Discovery, Defendants properly asserted a numerosity objection, and the objection, as in *Regents*, should be sustained.

### B.      The Court Should Not Now Modify the Scheduling Order *Nunc Pro Tunc*

Compared to the liberal standard for amending pleadings, the Federal Rules set a less forgiving standard for amending case management orders. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).  Fed. R. Civ. P. 16(b) specifies that such orders shall only be modified for "good cause," measured by the moving party's diligence in attempting to meet the case management order's requirements. *Id.*; *Scheidecker v. Arvig Enterprises, Inc.*, 193 F.R.D. 630, 631 (D. Minn. 2000) ("The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension."); *Metro Produce Distributors, Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 964 (D. Minn. 2007) ("carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."); *Shovein v. SGM Grp. USA, Inc.*, No. CIV. 06-1553RLE, 2008 WL 5459185, at *3 (D. Minn. May 13, 2008) ("A scheduling order is an important tool in controlling litigation…. A magistrate judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

Even if the moving party establishes diligence, the Court must consider the degree of prejudice to the non-moving party. *Id*; *Prairie River Home Care, Inc. v. Procura, LLC*, No. CV 17-5121 (JRT/HB), 2020 WL 1333153, at *3 (D. Minn. Mar. 23, 2020).

Patterson argues that this Court should now – on the eve of the close of written discovery – modify the Amended Scheduling Order to permit Patterson to serve additional discovery.  In support of this argument, Patterson contends that it "has acted diligently after Defendants decided to take their now contradictory position."  Patterson Br. p. 17.

Patterson's argument is untrue.  It is directly belied by its own conduct. It is Patterson that is trying to profit from its own contradictory positions.

Patterson has not been diligent.  Patterson and Pace served initial rounds of discovery in September and December 2019.  When HSI was added as a Defendant, HSI served a set of discovery, in January 2020.  Shortly thereafter, in early February 2020, Pace served an additional round of discovery on Patterson, as did Patterson on Pace.  No written discovery had been served by either side after February 2020.  The Court issued the Amended Scheduling Order in June 2020, which eliminated all doubt and firmly established the limit of 30 Interrogatories/RFPs per side.[10]  Then, without leave or discussion, Patterson improperly served its August 2020 Discovery.

---

[10] Again, rather than join HSI in its Motion to Amend the numeric limitation, Patterson opposed the request.

Now, at the end of October 2020 – **13 months** after the Court issued its original Pretrial Scheduling Order; **8 months** after Defendants served its last round of discovery requests; and mere weeks before the close of written discovery – Plaintiff is asking the Court, *nunc pro tunc*, to expand the discovery limitation that has been in place for well over a year.  Plaintiff's belated request, which directly contradicts its position taken six months earlier when it opposed any change to the discovery limit in the Amended Scheduling Order, should be summarily denied.

Plaintiff was aware of the "per side" limitation in the Pretrial Scheduling Order from September 2019, but never asked the Court to revise the language.  Plaintiff was aware of the "per side" limitation in March 2020, when Defendants sought modification of that language, but Plaintiff opposed that request.  Plaintiff was aware of the "per side" limitation when the Amended Scheduling Order was issued in July 2020, but again failed to act.  Despite countless opportunities to do so, Plaintiff delayed asking the Court to revise the "per side" limitation, until now, mere weeks before the close of discovery. *See Soo Line R. Co. v. Werner Enterprises*, No. CIV. 12-1089 DSD/JSM, 2013 WL 3771391, at *2 (D. Minn. July 17, 2013) (the movant's own unjustifiable lack of diligence and significant delay created the prejudice); *Prairie River Home Care, Inc. v. Procura, LLC*, No. CV 17-5121 (JRT/HB), 2020 WL 1333153, at *3 (D. Minn. Mar. 23, 2020) (finding a lack of diligence where a party "waited nearly a year after the case was filed to bring Salo into this action, waited another month to serve its Third-Party Complaint on Salo, and then waited even longer—until mid-January 2019—to serve any discovery requests on Salo"); *Diocese of St. Cloud v. Arrowood Indem. Co.*, No. CV 17-2002 (JRT/LIB),

4499370 007996.0285

2019 WL 79003, at *2 (D. Minn. Jan. 2, 2019) (Plaintiffs waited ten months to enlist counsel to search for additional records).

This conclusion is warranted from Plaintiff's own case. In *Webb v. Ethicon Endo-Surgery, Inc.*, No. CIV. 13-1947 JRT/JJG, 2014 WL 7685527, at *6 (D. Minn. Aug. 8, 2014), aff'd, No. CIV. 13-1947 JRT/JJK, 2015 WL 317215 (D. Minn. Jan. 26, 2015), the Court permitted Plaintiff to serve four additional discovery requests beyond the current limit, but refused to modify the scheduling order to permit expansive additional discovery. The Court held that the four additional requests could be served only because they were served contemporaneously with others, and they "barely exceed the document-request limit." *Id.* On the other hand, the Court would not modify the scheduling order to permit twenty additional document requests, because those twenty were 50% of the current limit, and appeared excessive. *Id.* Here, the August 2020 Discovery was served six months after all other discovery, and it would result in a significant expansion of discovery, as it constitutes an additional 16 discovery demands (11 Interrogatories and 5 RFPs), even excluding the fact that Patterson has already grossly exceeded the discovery limit.

Moreover, Defendants will be prejudiced if, at the eleventh hour, the Court modifies the Amended Scheduling Order, *nunc pro tunc*, to permit Plaintiff to serve additional discovery. To date – excluding Patterson's August 2020 Discovery demands, and if one were to ignore the massive numbers involved by the subparts to Plaintiff's

22

requests – the parties had served relatively equal amounts of discovery.[11]  If Plaintiff's

August 2020 Discovery were permitted, Plaintiff would receive the advantage of serving

an additional 16 requests.  Defendants have reasonably relied on the Amended

Scheduling Order and not served excessive discovery.  It would be unjust and prejudicial

for Defendants to be unfairly disadvantaged because they complied with the Amended

Scheduling Order, and Plaintiff should not benefit from its own intentional disregard of

the Court's discovery limitation. *See Fagen, Inc. v. Exergy Dev. Grp. of Idaho*, L.L.C.,

No. CV 12-2703 (JRT/SER), 2016 WL 2885958, at *3 (D. Minn. May 17, 2016).

Finally, when subparts are considered, Patterson has already served well in excess

of the 60 Interrogatories and 60 RFPs, which Plaintiff now seeks; thus any modification

to the Order would be futile and would not provide Plaintiff with any additional

discovery requests.  *See* Section D, *infra*; *see Shovein v. SGM Grp. USA, Inc.*, No. CIV.

06-1553RLE, 2008 WL 5459185, at *4 (D. Minn. May 13, 2008).

**C.**　**Plaintiff is Judicially Estopped from Arguing That the Amended Scheduling Order Should be Modified or for its "Interpretation" of the Order**

Also applicable to the Court's analysis is the doctrine of judicial estoppel. It holds

that "a party that takes a certain position in a legal proceeding, 'and succeeds in maintaining

that position,' is prohibited from thereafter assuming a contrary position 'simply because

---

[11] Excluding the August 2020 Discovery, and disregarding Plaintiff's excessive subparts, Plaintiff served 40 Interrogatories and 47 RFPs through one set of discovery on HSI, and two sets on Pace.  Defendants, *collectively*, had served 40 Interrogatories and 48 RFPs prior to entry of the Amended Scheduling Order, with HSI having served one set on Patterson in January 2020, and Pace having served two sets on Patterson.

his interests have changed,' especially if doing so prejudices the party 'who acquiesced in the position formerly taken by him.'" *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006).

Patterson should be judicially estopped from arguing that the Amended Scheduling Order should be modified, and that the written discovery limitation in the Order should be expanded from 30 "per side." Defendants' previously sought that requested relief and Patterson explicitly opposed the request. ECF 127, 136. Instead, Patterson sought to have the language remain the same, and to keep the limit at 30 RFPs and 30 Interrogatories "per side." Patterson prevailed on its previous position, and now, on the eve of the close of document discovery, Patterson has abandoned its original position, and argued the opposite – that the Court should modify the Amended Scheduling Order to permit Patterson, expansive discovery. Patterson asserts this now inconsistent position so that it can obtain an unfair advantage, through the service of new, broad discovery immediately before the deadline. Patterson should be estopped from asserting its new, inconsistent position. *See Jones v. Bob Evans Farms, Inc*., 811 F.3d 1030, 1033 (8th Cir. 2016) ("a court should consider whether the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped").

**D.    Even if the Court Adopts Patterson's "Interpretation" of the Amended Scheduling Order, Patterson Has Already Served in Excess of 60 Interrogatories and 60 RFPs.**

Even assuming, *arguendo,* Patterson's "interpretation" of the Amended Scheduling Order is adopted, and it is permitted to serve 60 RFPs and 60 Interrogatories,

Patterson has already exceeded that amount when considering the discrete subparts to Patterson's requests.  As discussed above, Patterson has served at least *69 Requests for Production* and *84 Interrogatories* on Defendants, grossly exceeding the allowable limit (30 Interrogatories/RFPs), and even Patterson's expanded "interpretation" of the limit (60 Interrogatories/RFPs).

### E.   Even if Plaintiff's Discovery Were Not in Violation of the Amended Scheduling Order, it is Objectionable on Substantive Grounds

#### 1.   Discovery Served on Pace

In addition to exceeding the permissible limit of discovery, Patterson's discovery served on Pace is substantively objectionable as well. Interrogatory No. 22 asks Pace to identify all files that she deleted, or attempted to delete, from any of her Mobile Devices since June 30, 2018 that have any relation to the claim, counterclaim, or defenses in this case. This is a patently overbroad and an improper omnibus Interrogatory. Written discovery is overbroad and unduly burdensome when it seeks documents or information "related to" or "pertaining to" another thing, and that thing is not a concrete fact or event. "Such a phrase often requires the answering party 'to engage in mental gymnastics to determine what information may or may not be remotely responsive.'" *Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *6 (D. Kan. Oct. 9, 2001) (denying motion to compel documents "pertaining to the claim herein"); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) ("Here, the terms 'regarding' and 'relating to' do not modify a specific document, but rather very general categories of documents[—specifically, documents relating to the present lawsuit]. The requests are so broad and open-

ended that Defendant could not possible fully determine—without undue burden—which documents would be responsive. In fact, the Court is hard pressed to even determine the outer boundaries of Plaintiff's requests. The Court therefore concludes that the requests, even as limited by Plaintiffs, are unduly burdensome on their face."). Patterson's Interrogatory ultimately requires Pace to engage in mental gymnastics.

In addition to exceeding the permissible limit of discovery, Patterson's RFP No. 22 is substantively objectionable as well. *First*, Patterson claims that Pace should be ordered to hand over her forensic vendor's reports because she already offered to provide her forensic vendors' reports. As Patterson knows or should know, this is false. As it does elsewhere, Patterson grossly mischaracterizes the posture of this case and the nature of the parties' communications to date. Pace *never* offered to produce her forensic vendors' reports created at her counsel's direction. Indeed, in the parties' February 26, 2020 meet-and-confer, Patterson expressly requested Pace's existing forensic reports and Pace expressly rejected that request. Premo Decl. ¶ 7. Rather, as detailed above, Pace offered to enter into a forensic protocol whereby Patterson could request certain of its own forensic reports and Pace's forensic vendor would generate and produce them. Premo Decl. ¶ 7; Joint Letter, at 2. Patterson repeatedly rejected these offers, ultimately stating that it would not enter into a forensic protocol on the basis that Patterson's counsel "didn't trust" Pace's forensic vendor, Premo Decl. ¶ 7. And as stated above, following this Court's Order denying Patterson's Motion, Patterson never followed up with Pace to enter into a stipulated forensic protocol. Premo Decl. ¶ 7.

*Second*, Patterson's Request is also overly broad and unduly burdensome on Pace's privacy interests. Patterson's Request seeks all documents created by Pace's forensic vendor "listing, detailing, or reporting, *in any way* the documents, data, and/or files deleted, or attempted to have been deleted, from any of Pace's Mobile Devices." This would capture at least one report showing virtually *all* of the data on a device, including web-browsing history, all of her communications with any other person, including attorney-client communications concerning this litigation, and work product. Premo Decl. ¶ 9. Such a report would provide Patterson the functional equivalent of an unfettered forensic examination, which this Court concluded Patterson was not entitled to when denying Patterson's previous motion to compel against Pace. *See* Order, at 10–11 (Apr. 2, 2020) (ECF 149). The Court should reject this Request on similar grounds as overly broad and unduly invasive of Pace's privacy interests.

*Third*, Patterson claims Pace should be ordered to hand over her forensic vendor's reports because any claim of work product was waived by disclosing the existence of a report concerning Pace's desktop computer. *See* Joint Letter, at 2. Patterson does not provide any authority for the proposition that acknowledging the existence of a consulting vendor's report, and providing a general description of it, waives any claim of work product over the document. Further, as stated above, in addition to the forensic reports constituting work product, Patterson's motion would compel the production of documents that contain the content of files, including attorney-client communications and attorney work product concerning this litigation.

Nor has Patterson shown exceptional circumstances permitting it to obtain Pace's forensic vendor's reports. Patterson has had other means to acquire certain sought-after information, because Pace repeatedly offered—and Patterson has repeatedly rejected—to have Pace's forensic vendor generate and produce certain reports, such as dedicated deleted-file reports, from the same universe of data pursuant to a stipulated forensic protocol. The only thing that has ever been in the way of Patterson obtaining the information it claims it needs, is its own stubborn refusal to entertain entering into any forensic protocol. Accordingly, the Court should deny Patterson's Motion with respect to Patterson's' RFP No. 22.

### 2.   Discovery Served on Schein

#### a.   Interrogatory Nos. 20, 28 and RFP No. 30 to HSI

Patterson has already asked for the information that is the subject of these requests – it was included in Patterson's Second Motion to Compel, which the Court largely denied.  Now Patterson is re-asserting nearly duplicative requests simply to get a second bite of the apple, and drive up Defendants' costs.

Interrogatory No. 20 is a blunderbuss multi-part request seeking (i) gross and net revenue and (ii) gross and net profits that HSI received from sales for 24 customers, broken down by sales involving (a) CEREC and/or CAD/CAM equipment and (b) all other types of sales/services.[12]  HSI objected as this Interrogatory exceeds the limit in the

---

[12] Based on a conservative estimate, this interrogatory constitutes 96 discrete subparts, as it seeks four categories of information for 24 separate customers. Patterson also asks for this information for multiple years.

Amended Scheduling Order, is duplicative of Interrogatory No. 17, is in contravention of the Court's June 17, 2020 Order, and seeks information from newly identified accounts after the Court previously ruled that Plaintiff was entitled to information on the 11 customers plus six.

Interrogatory No. 20 seeks virtually the same information as Interrogatory No. 17.[13]  When HSI objected to Interrogatory No. 17, Patterson moved to compel and refused to limit its request to a narrower subset of customers.  The Court *denied* Patterson's Motion as to Interrogatory No. 17 in its entirety, finding that it was overbroad and "Plaintiff may not simply assume that each and every one of Defendant Henry Schein's sales since Defendant Pace became its employee involved use purported confidential information and trade secrets." ECF 195, p. 54.

As part of the June 17, 2020 Order, the Court permitted Patterson targeted discovery (in response to Interrogatory Nos. 9 and 15, and RFP Nos. 10, 16, and 18) as to 11 customers Patterson previously identified, and up to six additional customers that Patterson could add. ECF 195, p. 49.  In reliance on the Court's Order, Patterson subsequently identified six additional customers in its June 23, 2020 letter, and HSI produced documents relevant to those customers. Skoff Decl., Ex. W.  None of the seven "new" customers that Patterson now identifies (Patterson Br., p. 8) were previously

---

[13] Interrogatory No. 17 asked to "[s]tate the amount of gross and net revenue and gross and net profits that Henry Schein received for each of the customers listed in Exhibit A for each month from January 2018 through the present." ECF 195, p. 52.

identified by Patterson in its June 23, 2020 letter, even though all of those customers were then known to Patterson.

As was true at the time of the Court's June 16 Order, Patterson still has not shown the relevance of any of the requested information or that "…each and every one of Defendant Henry Schein's sales [to these customers] since Defendant Pace became its employee involved use purported confidential information and trade secrets." ECF 195, p. 54.

Moreover, Interrogatory No. 20, as written, is highly intrusive in seeking vast quantities of business and financial information on a number of customers in Schein's Denver regional office. This information – including financials concerning Schein's profits, revenues and sales for various product types – is proprietary, highly confidential, and if disclosed to Patterson, would provide them with significant strategic insight into Schein's business. Patterson has shown no basis for this information; nor has Patterson shown any reason why it should be entitled to this information now, after it previously sought it in its Second Motion to Compel, and the Court denied the request.[14]

Interrogatory No. 28 broadly asks to describe "any involvement" Pace had in efforts to sell "any product or service" to any of a list of 24 customers.  Similarly, RFP No. 30 seeks documents concerning "any involvement" Pace had regarding same.  HSI

---

[14] Moreover, as stated in Defendants' Motion, Patterson has failed to produce <u>any</u> information supporting its damage calculation on 159 customers, including financial information concerning the customers it claims to have lost, and therefore, it is inequitable for Patterson to turn around and demand this information from HSI. ECF 263.

objected on the same basis discussed above.  Like Interrogatory No. 20, this Interrogatory is simply a regurgitation of prior duplicative requests: Interrogatory No. 15, and RFP No. 18 to HSI, as well as being independently objectionable on its own.  Interrogatory No. 15 sought the identity of all customer accounts assigned to Pace (or any person she supervises), including a description of her involvement with such accounts, the dates the accounts were activated and the orders for such accounts.  RFP No. 18[15] sought similar information.  This is now the third time Patterson is seeking information concerning Pace's "involvement" with various customers, without ever showing a basis for entitlement to such a request.

Moreover, Pace sold only CAD/CAM products for Patterson, and Plaintiff has not shown even facial relevance of its requests in any other product areas.

In its Second Motion to Compel, Patterson sought to compel HSI to respond to Interrogatory No. 15 and RFP No. 18, but the Court found that "Plaintiff failed to demonstrate how the overly expansive discovery sought is relevant to the claims or defense in the present case."  ECF 195, p. 47.  While the Court denied Plaintiff's motion

---

[15] RFP No. 18 sought:

> All Communications, Documents, and/or Electronic Records that show: (i) each customer account assigned to Daniele Pace or any person she supervises or with respect to which Daniele Pace has any responsibility at Henry Schein; (ii) the time period Daniele Pace had any such involvement with such accounts at Henry Schein; (iii) the Dates on which each of those accounts was opened and/or activated at Henry Schein; (iv) any and all orders, sales, quotes, proposals, requests for proposal, or business with each such account from January 1, 2018 through the present.

with respect to these requests, it ordered that HSI produce documents as to the 11 customers Patterson previously identified, and up to six additional customers. HSI produced documents and responded accordingly. Now, Patterson tenders this duplicative request – in violation of the Amended Scheduling Order – after the Court already ruled on this issue. Patterson's request as to Interrogatory No. 28 and RFP No. 30 should be denied.[16]

Patterson attempts to justify these belated, excessive and duplicative requests with the false pretext that it "has uncovered evidence that Pace stole and shared with Henry Schein Patterson's confidential information…" Patterson Br. p. 8. First, Patterson's "new information" is not new, and it does not show that anyone "stole" or "used" anything. The majority of what Patterson relies upon is information that either Defendant Pace produced early in discovery at the beginning of 2020 (*see e.g.,* Hammell Decl., Exs. 15-19) or information that Patterson itself possessed and produced (*see* Hammell Decl., Exs. 20, 21). Second, the information that was produced by Schein merely indicates that the customers in question were also doing business with HSI – something that is a common

---

[16] The Court should not permit Plaintiff to reassert nearly identical demands to those previously objected to, a month later with a new round of customers. Patterson initially tendered these demands seeking discovery from over 300 customers. Patterson then refused to reasonably narrow these requests to a manageable subset of customers, so the Court did it for them, giving Patterson the opportunity to obtain information on the 11 customers identified, and to identify six additional customers. Patterson identified six customers and HSI produced documents on them. Now, Patterson asserts the same demands for a new round of customers, without showing any basis therefor. We submit that the record demonstrates that Patterson has abused the discovery process and taken advantage of the Court's June 17, 2020 Order.

occurrence in the industry, and does not evidence bad faith conduct or "use" of Patterson's confidential information.  Third, the fact that Defendants' lost sales from these customers is entirely irrelevant, by itself, to justify discovery of Pace/Henry Schein. As detailed in Defendants' Motion, Plaintiff has put nearly 150 customers at issue claiming loss sales, but has failed to provide any evidentiary support for those conclusory assertions or establish any causal connection between any loss and Defendants' alleged conduct. Rather, Patterson failed to produce any information showing any causal link to any lost sales, but nevertheless tries again to use the bare allegation to engage in additional, expensive and intrusive discovery.

Finally, as noted by the Court in the June 16 Order, ECF 195, p. 47, note 13: "… as this Court has previously observed, Defendant Pace has already produced documents that constitute, reflect, refer or relate to her communications, contacts, or meetings with any of Plaintiff's customers or previous customers, as well as, any document referring to or mentioning Plaintiff's business or customers. (See Order, [Docket No. 149], at 14)."

In sum, most of the information Plaintiff claims to have "discovered" it has had for months, **and had the information in June 23, 2020, when it provided HSI with its additional customers for searching per the Court's June 17, 2020 Order.**  The record demonstrates that Plaintiff is abusing the discovery process by serving these excessive and duplicative requests, and Plaintiff's Motion should be denied.

### b.     Interrogatory Nos. 22-25 and RFP Nos. 27-28 to HSI

Interrogatory Nos. 22-25 and RFP Nos. 27-28 seek, *inter alia*: the "types of information" that HSI considers to be confidential and/or trade secret for its employees in

Colorado; information on "all the actions or measures" HSI has taken in Colorado for the last three-and-a-half years to preserve and protect confidential information and/or trade secrets; the identity of "every person" HSI has employed in a managerial or sales capacity role in Colorado over the last three-and-a-half years and indicating whether that person entered into an agreement with HSI that contained a confidentiality provision or restrictive covenant; the identity of "every person" employed by HSI in Colorado over the last three-and-a-half years and indicating whether the person had an exit interview; policies, codes, handbooks or other documents that HSI has used in Colorado over the last three-and-a-half years describing information HSI considers confidential or trade secret, and measures HSI used to protect such information; and documents or contracts HSI has had with any employee in Colorado over the last three-and-a-half years containing a confidentiality provision or restrictive covenant.

HSI objected to all of these requests as they are, among others: (1) over the numeric limit, (2) overbroad, (3) unduly burdensome, and (4) irrelevant.  This action concerns Patterson's allegedly confidential information and/or trade secrets and the steps Patterson took (or didn't take) to protect its information.  This case is not based on HSI's confidential information, or HSI's employment agreements or otherwise relating to HSI's practices and policies.

Patterson attempts to justify this expansive discovery by arguing that one factor relevant to whether Patterson took reasonable steps is the type of information "generally known … within an industry." Patterson Br., p. 28.  But what is or isn't "generally known" by competitors within the industry (*e.g.*, whether competitors know about

Patterson's pricing information) is a different issue than how competitors treat their own confidential information or trade secrets.  For example, whether HSI conducts exit interviews with its own employees, has no bearing on whether Patterson needs to conduct exit interviews of its employees who are required to use their own personal computers to do work for Patterson, and whether such information is "generally known."  Further, whether HSI enters into confidentiality agreements with its managerial employees has no bearing on whether Patterson did or should enter into the same with its CAD/CAM sales employees.  Patterson tendered expansive demands asking questions about HSI's policies, practices, and employment agreements none of which have relevance to whether Patterson took proper steps to secure Patterson's confidential information.

These requests amount to little more than a fishing expedition through a competitor's sensitive information. Patterson's multi-layered requests seek scores of documents pertaining to HSI's employees, contracts, policies and practices, and employment hiring/termination methods, that would require significant undertaking to produce at this late stage.  Patterson has put its own policies, practices and methods at issue in this litigation and cannot use this claim as a pretext to conduct expansive discovery on a competitor's policies and procedures.

### c.       Interrogatory No. 26 to HSI

In Interrogatory No. 26, Plaintiff seeks the identity of every single HSI employee who received, viewed, or was given access to any of the 1,908 documents listed in Patterson's Supplemental Answer to Pace's Interrogatory No. 2.  HSI objected as this Interrogatory is, among other things, over the numeric limit of permissible discovery,

overbroad and unduly burdensome, beyond the scope of relevant discovery, and seeks

information protected by the attorney-client privilege.[17]  This Interrogatory purports to

require HSI to determine whether nearly two thousand documents -- some of which are

Confidential or AEO -- were shared with an unlimited number of prospective custodians

– every HSI employee.  There is actually no way to accomplish the search required to

determine this, since, for example, AEO documents may not even be shown to anyone.

But even if there were a way, this request is grossly burdensome, and Patterson has not

shown a reason for it.

Moreover, Plaintiff has already received this type of information in slightly

differing form, specifically, production of documents received by HSI from Pace. All of

the documents on Plaintiff's Exhibit A to its responses to Pace, come from Pace.  In

response to RFP No. 4, HSI has already searched the custodians agreed upon, to attempt

to produce all communications received from Pace that have a created, sent or modified

date prior to March 19, 2019, when she became employed by Pace.  Thus, to the extent

this information can actually be located, it has already been produced.  In asking HSI to

determine any HSI employee who viewed any of the 1,908 documents (that are self-

proclaimed as Patterson's confidential information) - Patterson is engaging in a late-game

fishing expedition, and formulating a request that cannot reasonably be responded to.

---

[17] To the extent any HSI employee has been given access to, or viewed, for purposes of
assisting in this litigation, any documents that are the subject of this litigation, including
any of the 1,908 documents identified by Patterson, identification of such specific
documents would be subject to a privilege assertion by HSI.

Finally, Patterson has had this list of documents since April, 2020, and offers no explanation as to why it seeks this information, in excess of permitted discovery, and on the eve of the discovery deadline.

### d.    Interrogatory No. 27 to HSI

Interrogatory No. 27 seeks the factual basis for all RFAs that HSI failed to admit, including all facts ***and*** the identity of persons with knowledge regarding such facts.  HSI objected as Plaintiff was over the allowable number of discovery requests, and because this Interrogatory is a multi-tiered, compound request.  Specifically, this Interrogatory seeks all facts *and* the identity of persons with knowledge of such facts, pertaining to five separate RFAs. *See Superior Indus., LLC*, 2010 WL 11469569, at *9 ("[n]umerous courts have found that requests for substantive information along with a request for separate identification of witnesses … are considered individual interrogatory requests"); *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, No. CV 12-228 (JRT/AJB), 2013 WL 12147608, at *2 (D. Minn. Oct. 17, 2013) (same).  Therefore, this request is not only improper, but also constitutes 10 discrete subparts – two categories of information for five separate RFAs – and is, therefore, over the limit of the number of Interrogatories Paterson is permitted to serve (under any "interpretation" of the Amended Scheduling Order).

### e.    RFP No. 29 to HSI

RFP No. 29 to HSI seeks documents or communications concerning payments or benefits HSI provided to Pace, including any documents concerning an agreement by HSI to pay Pace's attorneys' fees and expenses related to this litigation.  HSI objected on the

basis that the request is in violation of the Amended Scheduling Order, seeks privileged communications, and is duplicative of discovery sought, and documents already produced by Defendants.

This RFP seeks information that has already been the subject of multiple prior Patterson requests that previously have been responded to.  Patterson asked for this information in its Second Motion to Compel, in Interrogatory No. 14 ("Describe any arrangements or agreements that you have with legal counsel for Daniele Pace that refer or relate to this matter.").  In that motion, the Court found that "Plaintiff's Interrogatory No. 14 has been properly responded to by Defendant Henry Schein." ECF 195, p. 52.  Further, this RFP seeks documents that were already sought from co-defendant Pace, and is now cumulative. ECF 88-5, p. 36, Interrogatory No. 14 (seeking a description of any right, representation, understanding, agreement, or claim Pace has for indemnification or for advancement or reimbursement for costs of Pace's defense).  In response to this demand, Pace agreed to submit her "Common Interest" Agreement with HSI for in camera review. ECF 123, p.1.  Further, Patterson sought this information via Interrogatory No. 12 ("Describe any compensation that Daniele Pace receives or has been or will be able to receive due to her position at Henry Schein …").  HSI responded to that Interrogatory.  And again, Patterson sought this information in Interrogatory No. 8 to HSI (describe communications HSI had with Pace relating to possible indemnification or reimbursement of costs).

HSI has repeatedly provided the responsive information, numerous times (*see e.g.*, Skoff Decl., Ex. T), yet Patterson still sought to unnecessarily burden the Court and

parties with its Motion, seeking this duplicative RFP, that was previously requested and provided.

## II.   PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE UNREDACTED VERSIONS OF ALL RESPONSIVE DOCUMENTS SHOULD BE DENIED

Patterson takes issue with HSI's redaction of certain documents produced and now seeks access to redacted information in eight documents produced by HSI.[18]

Patterson's overall characterization of HSI's redactions is grossly misleading and simply not true – and Patterson is well aware of this.  First, the Protective Order expressly recognizes the possibility that certain information may require additional protection.  *See* ECF 57, ¶11.  So providing such additional protection is not contrary to the Protective Order.

Second, context is relevant here.  Defendants produced over 200,000 documents. Premo Decl., ¶ 17.  The present dispute is over redactions in eight (8) documents, which, we believe, are not material to this case.

Further, in its memorandum of law, Patterson states that HSI redacted information that HSI deemed "not relevant" to the instant action and information that HSI "did not think the current AEO designation in the Scheduling Order properly protected." Patterson Br., pp. 13, 14.  This is incorrect.  Redactions were made to protect private and commercially sensitive information that has proprietary and economic value, or which is

---

[18] HSI is, of course, willing to make these documents available for the court's inspection *in camera*, if the Court deems such inspection necessary for a determination on the issue.

protected third party information, **and** which was **not responsive** to the parameters of the demands which HSI responded to.  Such redactions do not "misconstrue" the Court's Order or Patterson's demands.  The non-responsive information simply has no application to this case, is not within the realm of information HSI was ordered to produce, and is valuable information, in need of further protection.  Certain other redactions were made to protect privileged information (which was separately logged on HSI's privilege log), personal identifying information, bank account information, or log-in information of either third-parties, or Defendant Pace.

Turning to the redacted documents themselves, ████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████

- HSI0218-HSI0219: ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████

██████████████████████████████████

████████████████████████

- HSI0464-HSI0474: ████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████

██████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████

- HSI0996: ██████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

██████████

- HSI 09092: ███████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

- HSI12664: █████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████

- HSI12672: ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

- HSI12766: ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████



- HSI6917:

4499370 007996.0285



As the redacted information in these documents has no relation to this case, is highly confidential, and has commercial value and is proprietary to HSI, redaction of the same is proper and necessary and is consistent with Paragraph 11 of the Protective Order. Patterson has made it clear that it is HSI's competitor – as such, it is not entitled to receive HSI's confidential business information unrelated to the allegations in this case, simply because such information happens to exist in a document that has other responsive information.

While HSI will produce, under the enhanced AEO protection the parties agreed to, ███████████████████████████████████████, it should be noted that in arguing Patterson is entitled to this information, Patterson seems to misunderstand the basic elements of its claims in this action. HSI redacted specific contract terms concerning ████████████████████ ███████████████████████████████████ Patterson claims that the redacted contract terms "are directly relevant to causation, including why the customer bought from HSI, and are relevant to Patterson's unjust enrichment claims." For that to be true, the redacted

44

contract terms would have to in some way involve Daniele Pace, Pace's employment at Patterson and/or some form of Patterson confidential information or trade secret that Pace allegedly misappropriated and used with the customer. Patterson fails to explain, as indeed it cannot, how any of these factors are applicable to the redacted contract terms.

The case law Patterson relies on to compel production of certain redacted documents does not support Patterson's position. Patterson falsely states that the case law cited provides authority for the position that it is "improper" to redact "non-responsive" portions of documents. In fact, the cases cited by Patterson simply address redaction of information unilaterally deemed irrelevant by a party in a litigation – not a party's right or ability to redact non-responsive, confidential information contained in a document that also has responsive information. *See Hageman v. Accenture, LLP*, No. CV 10-1759 (RHK/TNL), 2011 WL 13136510, at *4 ("In the present case, Accenture has made no showing that harm would come from disclosing unredacted versions of otherwise responsive documents. In the absence of such a contention, Accenture has no right or basis to redact otherwise responsive documents on the basis of relevance."); *Lubrication Techs*, 2012 WL 1633259, at *3, *12 (ordering defendants to produce **responsive** information where protective order was in place to safeguard confidentiality of same). In fact, *Lubrication Techs* supports HSI's position as the Court expressly noted that "the scope of relevant information is **limited to information regarding customers reasonably identified by the Plaintiffs to be within the subject of this lawsuit**." 2012 WL 1633259, at *6. The information redacted here was either: privileged (and so listed on HSI's privilege log), personal identifying information of a third party, website log-in

45

information, third-party financial information, or non-responsive confidential business information.

Patterson's relentless pursuit of any of the redacted information, and particularly the redacted information for the eight documents at issue, is evidence that Patterson is using discovery in this litigation as a means to gain sensitive, confidential information concerning a competitor, unrelated to this action. Fed. R. Civ. P. 26 (b) is clear that discovery in a matter is limited to non-privileged information which "is relevant to any party's claim or defense and proportional to the needs of the case." Accordingly, Patterson's motion seeking to compel HSI to produce the redacted information in the eight documents identified above should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in all respects.

.

Dated: November 3, 2020                     **MADEL PA**

                                   By:   */s/ Stephen M. Premo*
                                         Christopher W. Madel (230297)
                                         Stephen M. Premo (393346)
                                         800 Hennepin Avenue
                                         800 Pence Building
                                         Minneapolis, MN 55403
                                         Phone: (612) 605-0630
                                         cmadel@madellaw.com
                                         spremo@madellaw.com

                                         *Attorneys for Defendants Daniele*
                                         *Pace and Henry Schein, Inc.*

4499370 007996.0285

**MOSES & SINGER LLP**

By: _/s/ Abraham Y. Skoff___
Abraham Y. Skoff (*admitted pro hac vice*)
Mark N. Parry (*admitted pro hac vice*)
Daniel A. Hoffman (*admitted pro hac vice*)
405 Lexington Avenue
New York, NY  10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
askoff@mosessinger.com

*Attorneys for Defendant Henry
Schein, Inc.*

47

4499370 007996.0285