IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patterson Dental Supply, Inc., | Civ. No.: 0:19-cv-01940-JNE-LIB |
| Plaintiff, | |
| v. | **DECLARATION OF STEPHEN M. PREMO** |
| Daniele Pace and Henry Schein, Inc., | |
| Defendants. | |

I, Stephen M. Premo, declare as follows:

1. I am over the age of eighteen and have first-hand knowledge of the facts contained in this declaration. If called to testify, I would do so consistently herewith.

2. I, along with Christopher W. Madel, am one of the attorneys at MADEL PA representing Defendants Daniele Pace ("Pace") and Henry Schein, Inc. ("Henry Schein") in this Action.

**Pace and Patterson's Discussions about a Forensic Protocol**

3. On November 25, 2019, Mr. Madel wrote to Patterson Dental Supply, Inc.'s ("Patterson") counsel, Joseph W. Hammell, proposing that Patterson agree to a forensic protocol similar to the one that the parties had discussed in the summer of 2019. Such a forensic protocol would authorize Pace's computer forensics vendor to generate and produce certain reports, including deleted-file reports, pursuant to a forensic protocol.

4. Attached hereto as **EXHIBIT 1** is a true and correct copy of correspondence from Christopher W. Madel to Joseph Hammell dated November 25, 2019.

1

5.      Patterson ignored Pace's November 25, 2019 proposal, and so, on December 6, 2019, Pace again renewed this offer as a compromise in lieu of Patterson's Request that Pace surrender her devices to Patterson for forensic inspection.

6.      Attached hereto as **EXHIBIT 2** is a true and correct copy of correspondence from Stephen M. Premo to Joseph W. Hammell dated December 6, 2019. Patterson rejected this offer and brought a motion to compel its own forensic examination of Pace's electronic devices.

7.      On February 26, 2020, after the hearing on Patterson's motion, the parties engaged in a court-ordered meet-and-confer to attempt narrowing their dispute. As explained in the parties' February 28, 2020 Joint Letter to the Court ("Joint Letter") [ECF No. 123], Mr. Hammell and I again discussed the prospect of resolving Patterson's demand for its own forensic inspection of Pace's devices. Mr. Hammell asked if Pace's forensic vendor had created any of deleted-file reports. I replied that Pace's forensic vendor had created a deleted-file report for Pace's desktop computer and possibly Pace's laptop.[1] Mr. Hammell asked if Pace would produce her forensics vendor's deleted-file reports, which were created at the direction of Pace's counsel. I rejected this proposal on the grounds that its non-testifying forensic vendor's reports constituted protected work product. In that same discussion, I reiterated that Patterson could simply enter into a protocol in which Pace's forensic vendor would generate the types of reports Pace identified in her Response to Patterson's first Motion to Compel. Mr. Hammell rejected Pace's offer, solely on the basis

---

[1] This latter supposition turned out to be incorrect.

that he "didn't trust" Pace's forensics vendor to provide accurate reports, even under a court-ordered forensic protocol. Refusing Pace's offer, Patterson asked the Court to grant Patterson's motion to compel an unfettered forensic examination of Pace's electronic devices.

8. The Court subsequently denied Patterson's motion. In so doing, the Court's Order did contain some factual inaccuracies about the parties' discussions and Pace's representations to Patterson's counsel and in its motion paperwork. For instance, Pace never stated that her forensic vendor had created reports setting forth "the content of [each] device, including reports on when the data on each devices was last accessed, if any data was deleted from any device, if there were any attempts to delete data, if the device was connected to another data source, file sharing information, and if any software was installed or uninstalled." Rather, Pace stated that she had offered to enter into a forensic protocol with Patterson under which her forensic vendor would produce such reports. In so stating, Pace was not representing, and did not intend to suggest, that the reports containing all of above information *already existed*. Pace was also not offering to produce any reports her forensics vendor generated at her counsel's direction. Rather, Pace's proposal was—and always had been—that her forensic vendor would *generate*, *then produce* reports containing these subsets of information pursuant to a stipulated forensic protocol.

9. Patterson's Request for Production No. 22 would capture at least one report showing virtually *all* of the data on a device, including web-browsing history, all of her communications with any other person, including attorney-client communications concerning this litigation, and work product.

10. Following this Court's Order denying Patterson's Motion, Patterson never followed up with Pace about entering into a forensic protocol.

**The Parties' January 24, 2020 Discovery Conference and Patterson's Reversal**

11. On January 24, 2020, I had a discovery conference with Patterson's counsel, Kristin Zinsmaster and Mr. Hammell. The purpose of the call was to discuss deficiencies in Patterson's discovery, which I had raised in a preceding discovery deficiency letter.

12. Toward the beginning of the January 24 conference, Mr. Hammell raised the issue of the limitation on the amount discovery permitted by "any side", pursuant to the Court's September 26, 2020 Pretrial Scheduling Order ("September Scheduling Order"). Mr. Hammell stated that he interpreted September Scheduling Order as permitting each party to serve 30 Interrogatories, 30 Requests for Production, and 30 Requests for Admission on any opposing party.

13. Because this issue was not identified as part of the call agenda, I had not consulted the Scheduling Order in advance and did not have a copy of the Scheduling Order in front of me at the time. I stated that I would "have to take a look" at the language in the Scheduling Order and "think about it." I gave my initial impression that, without the benefit of having the Scheduling Order in front of me, Patterson's construction "seem[ed] right": I added that, certainly, I did not think Henry Schein's discovery should be limited by the discovery Pace had already served; and that Patterson should be able to serve "some discovery" on Henry Schein. But I also observed that Patterson had already served a subpoena on Henry Schein. Mr. Hammell further represented that Patterson's anticipated discovery on Henry Schein would "basically mirror" the discovery served in the subpoena.

Mr. Hammell assured me that he would allow Defendants to "think about it" and that he would not try to "jam [me] and make [me] make a decision on the spot." At no time during our January 24, 2020 conference, did we reach an agreement on the issue. And we never discussed the issue again.

14. Attached hereto as **Exhibit 3** is a true and correct recording of the parties' conversation on January 24, 2020. The relevant discussion begins at minute 17:18.

15. Contrary to the representations made by Patterson counsel in the January 24 conference—that Plaintiff believed the original Scheduling Order already permitted Henry Schein, which had just become a party, its own 30 Interrogatories, 30 Requests for Production, and 30 Requests for Admission (and by the same logic, seven of its own depositions), Patterson *opposed* any amendment to the Scheduling Order in March that would simply make that clear. [ECF 136.] Indeed, nowhere in its memorandum in opposition to Defendants' Motion to Amend did Patterson state that, in its view, the original Scheduling Order *permitted* Henry Schein, in addition to Pace, to take such discovery. Instead, Patterson now argued that allowing the amendment sought by Defendants would allow Defendants to "serve more written discovery than contemplated by the [September] Scheduling Order." Pl.'s Memo. in Opp. to Defs.' Mot. to Amend Scheduling Order, at 14. [ECF 136.] This position—opposing Henry Schein being able to take additional written discovery—was the exact opposite of the position that Patterson took during our January 24, 2020 conference.

16. Both Pace and Henry Schein have forgone serving additional discovery as a result of the Court's June 16 Order maintaining the "any side" language of the September 26, 2020 Scheduling Order.

17. Defendants have produced over 200,000 documents; Patterson, less than 36,000.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 3, 2020

*s/Stephen M. Premo*
Stephen M. Premo