**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Patterson Dental Supply, Inc.,

    Plaintiff,

v.

Daniele Pace and Henry Schein, Inc.,

    Defendants.

Case File No. 19-cv-01940-JNE-JFD

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HENRY SCHEIN INC.'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING DAMAGE EVIDENCE AT TRIAL BASED ON ITS FAILURE TO COMPLY WITH DISCOVERY ORDERS AND UNTIMELY SUPPLEMENTS**

## PRELIMINARY STATEMENT

Defendant Henry Schein Inc. ("Schein") moves for an order, *in limine* and pursuant to Rule 37, precluding Plaintiff Patterson Dental Supply, Inc. ("Patterson") from claiming damages for, or introducing evidence of: (i) Lost Non-Equipment Sales, Lost Equipment Sales, and Lost CAD/CAM Trade-Up Opportunities, because of its failure to produce underlying first-hand records of such sales as required by this Court's discovery order, and (ii) the damage computations in its Fourth, Fifth, Sixth and Seventh Supplements of Patterson's Rule 26(a) disclosures, which Patterson belatedly produced after the close of discovery. *See* Declaration of Avi Skoff ("Skoff Decl."), Exs. A-D (Fourth, Fifth, Sixth and Seventh Supplements, collectively, the "Untimely Supplements").

Patterson should be precluded from offering evidence of the above-categories of lost sales because Patterson failed to produce the underlying records supporting such sales. Defendants moved to compel production of the underlying records and the Court (Brisbois, *U.S.M.J.*), granted Defendants' motion. The Magistrate ordered production of the evidentiary material supporting Patterson's computation, and underlying records concerning damage-related document requests. ECF 305, pp.20- 31 (the "Order"). The Order compelled Patterson to produce underlying records used to create the computation and "produce said documents as they are kept in [Patterson's] usual course of business." ECF 305, p.27. Under risk of preclusion, the Order required Patterson to produce documents in response to specific demands, including records of specific products, customers, and quantities that Patterson claimed as its damages. *Id.*, pp.24-25.

2

Patterson never produced the underlying first-hand records – the invoices, purchase orders, customer quotes or records of sales – for each customer as required by the Order. Patterson's failure was highly prejudicial, as it deprived Defendants of the opportunity to test the accuracy and legitimacy of Patterson's computations, and its causation theory. Testing the accuracy of Patterson's numbers was necessary because Patterson previously offered damages computations that were discovered to be completely inaccurate.

After the close of discovery, Patterson completely changed its damage computation in the Untimely Supplements by, for the first time, using Schein's sales as a basis to compute its own purported lost profits. Prior to the close of discovery, Patterson never disclosed that it intended to rely on Schein's sales data as its measure of damages. Patterson waited until after discovery to use this new theory, depriving Defendants of the ability to obtain discovery on this theory.

## BACKGROUND

**Patterson's Original Damage Computation**

On April 22, 2020, Patterson produced its original damage computation in its Second Supplement to its Initial Disclosures. ECF 374 ("Second Supplement"). The Second Supplement claimed damages in excess of $10 million based on losses from 159 existing and nine prospective customers. *Id.* Patterson's computation compared year-over-year sales to obtain a loss with each customer.[1] *Id.* Patterson did not produce the

---

[1] Patterson previously provided wholesale inaccurate sales data in its damages computation (Patterson's Second Supplement) but maintained, throughout discovery, that the incorrect numbers were actually accurate. Defendants had no ability to discover these errors because Patterson never produced the backup. Only after Defendants made separate motions to

3

underlying records – the quotes, invoices, and customer orders – for the sales to these customers.[2]

**Defendants' Motion To Compel And The Order**

Notwithstanding Defendants' meet and confer efforts, Patterson refused to provide the backup, forcing Defendants' motion to compel. Defendants' motion sought the evidentiary material supporting Patterson's damages, including underlying transactional records concerning the products, customers and quantities making up the alleged decline in sales. *See* ECF 261; Schein Requests For Production ("RFP") Nos. 16, 17, 20-22, Pace's RFP No. 22; ECF 263, pp.20-21.

On December 21, 2020, the Court (Brisbois, *U.S.M.J.),* granted Defendants' motion, and directed Patterson to "produce the documents or other evidentiary material upon which its computation [of damages] is based, including material bearing on the nature and extent of injuries suffered" and to "disclose the underlying documents it used or referred to in creating [its computation]" and "produce said documents as they are kept in Plaintiff's usual course of business." ECF 305, pp.26-27. The Magistrate also compelled Patterson to respond to requests seeking first-hand records on a transaction-level concerning specific

---

compel and for sanctions did Patterson purportedly correct the errors and acknowledge that its data was inaccurate due to Patterson's counsel's misalignment and "sorting error." ECF 382, ¶¶4-6.

[2] For example, the first customer on the Second Supplement is ███████████████████████████████████████████████████████████████ Patterson never produced the underlying records to corroborate these numbers. Of course, we now know that the numbers contained in the Second Supplement were inaccurate.

products, customers, and quantities. *See* ECF 265-4, Pace RFP 22 ("Documents [ ] concerning lost customers, lost sales or diminished sales … [s]uch documents should show specific products, specific customers, and specific quantities."). The Order indicated that if Patterson did not comply it "risk[ed] being precluded from using said information at trial." ECF 305, p.30, fn11. The Court gave Patterson a deadline of January 13, 2021.

**Patterson's Failure To Comply With The Order**

On January 13, 2021, Patterson produced just 41 documents, 32 of which were litigation-related invoices. Skoff Decl., ¶7. None of the remaining nine contained sales quotations, invoices or customer orders, or other first-hand records concerning the transactions that makeup Patterson's damages. One of the spreadsheets produced contains a "Mini Mega Report" tab, which purportedly contains computerized sales information from Patterson. ECF 373. But this spreadsheet contains second-hand, computerized, aggregated data, showing sales on a monthly basis, not underlying records or first-hand documentation detailing each transaction.

Also, even though Patterson was compelled to produce documents responsive to Defendants' demands, Patterson did not do so, instead, listing ***over a thousand*** pages of Bates numbers that still did not contain sales data backup. Skoff Decl., Ex. E, pp.20-1082.[3]

That same day Patterson produced a new damage computation that completely contradicted the Second Supplement. ECF 374-2 ("Third Supplement"). Patterson later

---

[3] As of the briefing on summary judgment, Patterson still had not produced the documents ordered produced. In its motion papers, Schein objected and noted that, at trial, Schein would move *in limine* to preclude. ECF 462, p.14.

acknowledged that the Second Supplement contained wholly inaccurate numbers as a result of an attorney "misalignment" error. *See* ECF 382 (describing the "inadvertent sorting error" but failing to explain when the error was discovered or why Patterson waited nine months until the court-ordered deadline to correct the false data).

Patterson's Third Supplement also contained four categories of damages:



ECF 374-2.   The first three categories rely on Patterson's own internal sales data, which was not produced.

**Patterson Changes Its Damages After Discovery**

After the close of discovery, Patterson drastically changed its damage theory in the Untimely Supplements to rely on Schein's sales information to compute Patterson's own purported lost profits. Skoff Decl., Ex. A.[4] In the Untimely Supplements Patterson also identified a new category of damages, "Lost CEREC Club Sales." *Id.*

---

[4] Schein's sales numbers were not provided during the normal course of discovery; they were provided as part of an exchange of data between the parties, to resolve a third-party subpoena. During discovery, the Magistrate denied Patterson's motion to compel Schein to produce sales data to over 300 customers, finding that "[Patterson] has failed to meet the threshold relevance requirement to seek the revenue and profit information for every [ ] Schein customer with which Defendant Pace had some unspecified interaction with at some further unspecified point in time during her almost five-year term of employment

# ARGUMENT

## I. PATTERSON FAILED TO COMPLY WITH THE ORDER AND SHOULD BE PRECLUDED FROM OFFERING DAMAGE EVIDENCE AT TRIAL

Rule 37 allows courts to impose sanctions, including preclusion, for violating discovery orders. Fed. R. Civ. P. 37(b)(2)(A)(ii). *See QXMedical, LLC v. Vascular Sols., LLC*, 408 F. Supp. 3d 996, 1016 (D.Minn. 2019) ("[b]ecause [party] violated the scheduling order, the Court will preclude it from arguing [in defense of a claim]"); *Sellers v. Mineta*, 350 F .3d 706, 711 (8th Cir. 2003) ("The power of the trial court to exclude exhibits [] not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case."); *Mems v. City of St. Paul*, 327 F.3d 771, 780 (8th Cir. 2003).

Rule 37 also provides that if a party fails to comply with Rule 26(a), that party may be precluded from using the subject information at trial, unless the failure was justified or harmless. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Rule 37(c)(1) makes exclusion of evidence "automatic" and "self-executing". *Id.* at 705.

Rule 26(a) and the Order required Patterson to produce the documents necessary to verify Patterson's sales data, including transaction-level documents detailing the products, customers, and quantities that make up Patterson's sales. Patterson never produced that documentation.

---

with Plaintiff." ECF 195, pp.52-56. Patterson did not argue that Schein's sales data was relevant because Patterson intended to base its damages on that data.

There are three categories of damages that should be precluded because of Patterson's failure to comply with the Order: Lost Non-Equipment Sales, Lost Equipment Sales, and Lost CAD/CAM Trade-Up Opportunities. These categories rely on Patterson's internal sales records that have not been produced. For example, the Seventh Supplement lists ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But Patterson has not produced the invoices or orders to corroborate these numbers and demonstrate which products were purchased in 2018, but not in 2019 – facts that might explain why a purchase was made in one year rather than another. The only order forms Defendants have been able to locate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Patterson did not produce any merchandise invoices for ▓▓▓▓▓ Without those invoices, Defendants cannot verify the accuracy of Patterson's numbers (which were demonstrated to be false once) or test Patterson's theory that Defendants' conduct caused the decline in these merchandise sales.[5]

Patterson cannot argue that the nine spreadsheets it produced satisfies its obligations under the Order. These spreadsheets show monthly sales numbers, not first-hand transaction detail showing what product was sold, the date of sale, the quantity sold, and identifying information that connects the specific sale to the alleged wrongful conduct alleged. Patterson should be precluded from offering evidence of these categories of

---

[5] As a further example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

damages at trial. *See Coin-Tainer Co., LLC v. Pap-R Prod. Co.*, No. 3:19-CV-234-DWD, 2021 WL 5998653, at *3 (S.D. Ill. Dec. 20, 2021) (granting motion to preclude where plaintiff produced 15 pages of invoices but failed to provide any evidence that connected the invoices to the subject of damages claim); *Wong v. Seattle Sch. Dist. No. 1*, No. C16-1774 RAJ, 2018 WL 4630385, at *5 (W.D. Wash. Sept. 27, 2018) ("although Plaintiffs did produce a large amount of medical records [] they did not indicate which ones would be used in their damages calculation."); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611 JLR, 2014 WL 4848229, at *6 (W.D. Wash. Sept. 29, 2014) ("The plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages.... Simply providing documents or other information and assuming that the defendant will somehow divine the plaintiff's damages computation … is insufficient and not in accord with the requirements of Rule 26[]"); *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 17-5009 (JRT/KMM), 2020 WL 5813291, at *5 (D. Minn. Sept. 30, 2020) (excluding damage evidence where party failed to disclose supporting documents).

## II. PATTERSON'S UNTIMELY SUPPLEMENTS SHOULD BE PRECLUDED

Patterson should also be precluded from offering evidence of, or seeking the damages contained in, the Untimely Supplements, produced many months after discovery.

Defendants would be highly prejudiced if Patterson were able to introduce these damages calculations at trial because its untimely disclosure prevented Defendants from having a full opportunity to test them in discovery. *See US Salt, Inc. v. Broken Arrow, Inc.*, No. CIV. 07-1988 RKH/JSM, 2008 WL 2277602, at *5 (D.Minn. May 30, 2008) (excluding untimely damages where "[i]t would be fundamentally unfair to allow [plaintiff]

to proceed with a completely new damages claim that was never revealed during the discovery process" and "record shows that all of the evidence [plaintiff] seeks to introduce was in its possession from the very early stages of the litigation and it offers no excuse for its failure to disclose other than its strategic decision"); *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.,* 53 F.3d 186, 190 (8th Cir. 1995) (affirming exclusion of "eleventh-hour attempt to switch the basis for its alleged damages"). Patterson's late supplements have prevented Defendants from seeking discovery concerning newly identified damages.

There is no justification for Patterson's untimely disclosures. These disclosures are not based on newly learned information, but on facts that took place long before the end of discovery. Patterson completely altered its damage computation based on Schein's sales data. Prior to the close of discovery, however, Patterson never disclosed that Patterson intended to rely on Schein's sales data as its measure of damages. Patterson sought Schein's sales data in discovery and the Magistrate denied Paterson's motion because Patterson failed to show that the data was relevant. Schein's sales data was only produced in order to resolve a dispute involving a third-party subpoena. If that data was critical to Patterson's alleged damages, it should have raised that issue during discovery.

The new damage category Patterson first identified three months after discovery is "Lost CEREC Club Purchases." This category is based on Patterson's own data from March 2019 to February 2020. Skoff Decl., Ex. D, p.11. Patterson states that "Patterson reviewed ***its CEREC Club records*** for the original list of customers that Pace had a relationship with …." *Id.*, p. 17 (emphasis added). But Patterson's "[own] CEREC Club

records" from March 2019 to February 2020 were obviously available to Patterson for at least a year before discovery ended in February 2021.

Patterson should be precluded from using the information in the Untimely Supplements. *See Cannon Techs., Inc. v. Sensus Metering Sys., Inc*., No. CIV. 08-6456 RHK/LIB, 2011 WL 4952984, at *1 (D. Minn. May 5, 2011) ("Cannon has offered no substantial justification for its failure, and the Court does not believe that the untimely disclosure is harmless, since it has prevented Sensus from undertaking discovery related to the fraud damages and requires Sensus's damages expert to amend her opinions (if possible) in the eleventh-hour"); *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc*., No. 3:11-CV-268 JD, 2017 WL 3016385, at *3 (N.D. Ind. July 17, 2017) (late disclosure precluded where plaintiff's "computation [did] not rely on any 'new information'—all of the information pertinent to the computation has been available to it for years").

### III.  PATTERSON'S FAILURE TO DISCLOSE WAS NOT JUSTIFIED

Courts consider the following factors to determine whether a failure to disclose is justified: (1) prejudice to the party against whom the evidence is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing the evidence would disrupt the trial; and (4) moving party's bad faith or willfulness. *Roderick v. Wal-Mart Stores E., L.P.*, 666 F.3d 1093, 1097 (8th Cir. 2012).

Here, Patterson's failures to disclose and untimely disclosures are not justified. First, Defendants have been prejudiced as the lack of timely disclosure deprived them of the ability to test Patterson's computations and to assess the legitimacy of Patterson's

11

causation theory. Patterson also deprives the jury of evidence to determine whether sales declined due to Defendants or other readily explainable business justifications.

Second, Patterson's failure to disclose was willful. Patterson knew it was required to produce the information pursuant to the Order and failed to do so.

Third, if Patterson seeks to introduce charts of its damages at trial, those charts are objectionable under Federal Rule of Evidence 1006. Rule 1006 prohibits the use of charts or summaries unless they "fairly summarize voluminous trial evidence" and the underlying evidence was made available to the adversary. *United States v. Needham*, 852 F.3d 830, 837 (8th Cir. 2017); *United States v. Wainright*, 351 F.3d 816, 821 (8th Cir. 2003) (charts and summaries distilling large amount of data "must be based upon evidence in the record"). Because Patterson failed to produce the underlying sales records, Patterson's spreadsheets or charts summarizing these records will be inadmissible. *See United States v. Robinson*, 774 F.2d 261, 276 (8th Cir. 1985) (summaries must be complete and accurate as shown through the foundation of underlying documents).

## CONCLUSION

Patterson should be precluded from claiming damages on, or introducing evidence of, Lost Non-Equipment Sales, Lost Equipment Sales, and Lost CAD/CAM Trade-Up Opportunities, and the Untimely Supplements.

Dated: September 23, 2022

**MADEL PA**

By: */s/ Christopher W. Madel*
Christopher W. Madel (230297)
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN 55403
Phone: (612) 605-0630
cmadel@madellaw.com

*Attorney for Defendants Daniele Pace and Henry Schein, Inc.*

**Premo Frank PLLC**

By: */s/ Stephen M. Premo*
Stephen M. Premo (393346)
300 Union Plaza
333 N Washington Ave.
Minneapolis, MN 55401
Phone: (612) 445-4072
stephen@premofrank.com

*Attorney for Defendants Daniele Pace and Henry Schein, Inc.*

**MOSES & SINGER LLP**

By: */s/ Abraham Y. Skoff*
Abraham Y. Skoff (*admitted pro hac vice*)
Mark N. Parry (*admitted pro hac vice*)
Daniel A. Hoffman (*admitted pro hac vice*)
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
askoff@mosessinger.com

*Attorneys for Defendant Henry Schein, Inc.*